# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ANARION INVESTMENTS LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 3:14-cv-00012 |
| v. | § | |
| | § | Judge Aleta A. Trauger |
| | § |    Magistrate Judge John S. Bryant |
| BROCK & SCOTT, PLLC; CARRINGTON | § | |
| MORTGAGE SERVICES, LLC; | § | |
| CHRISTIANA TRUST; LEIPZIG LIVING | § | DEMAND FOR JURY TRIAL |
| TRUST, | § | |
| Defendants. | § | |
| _____ | § | |

---

## FIRST AMENDED COMPLAINT

---

Plaintiff Anarion Investments LLC, by and through its undersigned counsel, hereby files this First Amended Complaint and alleges upon information and belief:

### PRELIMINARY STATEMENT

This case is about many things, and its underlying facts are still being uncovered and coming to the fore. Other than the pervasive fraudulent scheme orchestrated by defendants, possibly funded by other as yet unnamed third parties who may or may not be complicit in the overall historical arc of this case, the paramount focus of this civil action is the unlawful debt collection activities engaged in by three of the defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* In part, the FDCPA prohibits debt collectors from taking "any action that cannot legally be taken or that is not intended to be taken," engaging in any conduct that would "[h]arass, oppress, or abuse any person in connection with the collection of a debt," and using "unfair or unconscionable means" or "false, deceptive, or misleading representations or means" in their debt collection activities. See, e.g., 15 U.S.C. §§ 1692d, 1692e, 1692f, and Federal Trade Commission, *Staff Commentary on the FDCPA*, §§ 806, 807(5), 808. Contrary to what certain defendants would have the Court believe, the FDCPA does not only apply to consumers.

The foreclosure portion of the debt collection industry is largely made up of small to medium size companies whose profit models depend on the rapid and high-volume turnover of families' homes. Some of these companies, commonly referred to in the industry as "foreclosure mills," are actually loosely knit groups of individual attorneys who, through mass multi-state advertisement, hold themselves out to the public as full-service and one-stop debt collectors. Defendant Brock & Scott, PLLC, ("B&S") is one such company.[1] True and accurate copies of pages recently drawn from B&S's Internet website are attached hereto as **Exhibit 1**.

In November 2013 plaintiff discovered, quite fortuitously, that defendants B&S, Carrington Mortgage Services, LLC ("Carrington"), and Christiana Trust (collectively, the "Foreclosing Parties") published a foreclosure sale notice in the Tennessean (the "Notice of Sale") representing as fact that Christiana Trust appointed B&S, as substitute trustee, "*by an instrument duly recorded in the Office of the Register of Deeds of Williamson County*," to sell a family's home in Brentwood, Tennessee (the "Hampton Reserve Property"). The Foreclosing Parties' public representation, required by state and federal laws to be truthful and not misleading or deceptive, was undeniably false. No such recorded instrument existed. A true and accurate copy of the Notice of Sale is attached hereto as **Exhibit 2**. All three public Notices of Sale, the number of such notices as is required under Tennessee law and each actionable under the FDCPA, suffer the same infirmity.

Not only did the published Notices of Sale not properly designate the substitute trustee of record, but they also confirm, among other things, that the Foreclosing Parties did not properly provide the requisite statutory notice of the foreclosure sale to the following "interested parties": (1) plaintiff, the equitable owner of the Hampton Reserve Property; (2) the tenants of the Hampton Reserve Property; (3) defendant Leipzig

---

[1]    Including the company itself, the B&S attorneys who oversee, have knowledge of and are responsible for the unlawful debt collection and other activities alleged herein include January N. Taylor and Nicholas H. Adler. Mr. Adler is the attorney of record representing all defendants herein, save and except the Tennessee trust defendant. Mr. Adler's continued legal representation of his own law firm, on the one hand, and two of the other defendants herein, on the other hand, may present irreconcilable conflicts of interest under Tennessee Rules of Professional Conduct 1.7(a) and provide a basis for counsel's recusal. The "feeder" companies to foreclosure mills like B&S include the holders and servicers of troubled, defaulted and nonperforming mortgage loans that were purchased, often without any advance due diligence, from large financial institutions as part of bundled investment packages sometimes consisting of thousands of other debt obligations. Defendants Carrington Mortgage Services, LLC and Christiana Trust are two such companies.

Living Trust (the "Tennessee Trust"), the title owner of the Hampton Reserve Property, and (4) Kirk Leipzig ("Leipzig") the borrower signing the underlying debt. In the truest sense of the phrase, the Foreclosing Parties were attempting to literally sell the property out from under plaintiff and other interested parties, i.e., "under the radar" so to speak, without those having the right to know knowing it. To aggravate things further, prior to the Notices of Sale first being published the Foreclosing Parties were acting in concert and complicit with the Tennessee Trust and Leipzig to sell the Hampton Reserve Property at foreclosure without plaintiff's knowledge.

The above two examples represent only the tip of the iceberg concerning defendants' unlawful activities. Defendants' surreptitious plan to defraud plaintiff and deprive it and others of the value of their investments and their legal and equitable interests in the Hampton Reserve Property, which scheme began with the initial attempt to foreclose on the Hampton Reserve Property over one year ago in early February 2013, may have succeeded had it not been for plaintiff's fortuitous November 2013 discovery of the initial Notice of Sale. Up until then it primarily manifested itself in the form of a threat by Leipzig, who was himself threatened by another who had sued him before, directed to plaintiff and its representative as to what would happen should plaintiff or anyone else expose Leipzig for certain other sundry and improper acts involving other third parties, some of them apparently uninformed as to Leipzig's true intentions.

The first failed attempt to foreclose eventually led the former mortgage loan holder, Bank of America, N.A. ("BANA"), to abandon its own collection and foreclosure efforts and distance itself from the borrower and title owner with whom it had been inextricably associated, i.e., Leipzig and the Tennessee Trust. Unbeknownst to plaintiff at the time, the Foreclosing Parties later secured BANA's position under the mortgage loan and then attempted to succeed where BANA failed. The "confidential" transfer of the mortgage loan from BANA to Christiana Trust (the "Confidential Assignment") was kept hidden from plaintiff until after this legal action was filed. A true and accurate copy of the Confidential Assignment is attached hereto as **Exhibit 3**.

Notwithstanding all the secret agendas a attendant gymnastics defendants' fraudulent scheme was eventually exposed. Apparently, defendants believed they could fool all of the people all of the time. They

were wrong. Upon being made aware of the irregularities attendant to the foreclosure processes and plaintiff's later discovery and knowledge of defendants' scheme B&S wisely postponed the foreclosure proceedings as BANA similarly did earlier that same year. All told, since the initial failed attempt in February 2013 the foreclosure sale has been rescheduled *five additional times* and Leipzig's involvement in *no fewer than seven* alleged Ponzi schemes has now impacted the ebb and flow of the parties' negotiations.

Defendants' unlawful debt collection and fraudulent activities continue to mature and remain largely unabated.[2]

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action is a civil action arising under the Constitution, laws, or treaties of the United States including, but not limited to, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, *et seq*.

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because certain of the claims herein are so related to claims in the action within such original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, all of the property that is the subject of this action is located in this district, and defendants regularly conduct business in this district.

## PARTIES

4. Plaintiff Anarion Investments LLC is a Delaware limited liability company, is organized and existing under the laws of the state of Delaware and, pursuant to the Tennessee Revised Limited Liability Company Act, Tenn. Code Ann. § 48-249-101, *et seq*., is a foreign limited liability company not deemed to be transacting business in this state for purposes of obtaining a certificate of authority to transact business.

---

[2]    Tenn. Code Ann. § 35-5-107 provides that any officer or other person referenced in Tenn. Code Ann. § 35-5-106 who fails to comply with the provisions of Tenn. Code Ann. § 35-5-101, *et seq*. commits a Class C misdemeanor and is liable to the party injured by the noncompliance, for all damages resulting from the failure. The Foreclosing Parties and their respective officers, representatives and attorneys are subject to the provisions of Tenn. Code Ann. § 35-5-107.

5.     Defendant B&S is a North Carolina professional limited liability company.  B&S is organized and existing under the laws of the state of North Carolina and is doing business in the state of Tennessee.  B&S forecloses loans serviced by defendants Carrington and/or Christiana Trust and, additionally, BANA.  B&S can be served with judicial process at 4550 Country Club Road, Winston Salem, North Carolina 27104.  B&S claims CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929 as its registered agent for service of process.

6.     Defendant Carrington is a Delaware limited liability company.  Carrington is a company based in Santa Ana, California, and is organized and existing under the laws of the state of Delaware.  Carrington can be served with judicial process at its principal office located at 1610 E. Saint Andrew Place, Suite B-150, Santa Ana, California 92705.  Carrington claims CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929 as its registered agent for service of process.

7.     Defendant Christiana Trust is a division of Wilmington Savings Fund Society, FSB ("WSFS Bank"), as Trustee for Stanwich Mortgage Loan Trust, Series 2012-17. WSFS Financial Corporation is parent to WSFS Bank.  Christiana Trust is a company based in Greenville, Delaware, and is organized and existing under the laws of the state of Delaware.  Christiana Trust can be served with judicial process at its principal office located at 3801 Kennett Pike, Suite C200, Greenville, Delaware 19807 through its chief investment officer, Scott Armiger.

8.     Defendant Tennessee Trust is a Tennessee Asset Protection Trust.  The Tennessee Trust is organized and existing pursuant to the Tennessee Investment Services Act of 2007 and is doing business in the state of Tennessee.

9.     B&S, Christiana Trust and Carrington are sometimes collectively referred to herein as the "Foreclosing Parties."  At all relevant times herein the Foreclosing Parties were the agent, principal and/or authorized representative of each other and at all relevant times herein acted within the scope of such individual relationships and on behalf of and with the approval, consent and/or encouragement of each other.

## FACTUAL BACKGROUND

10.     Since 2008 the Tennessee Trust has held legal title to certain residential real property located at 9569 Hampton Reserve Drive, Brentwood, Tennessee 37027 and which Parcel ID is Lot 31 of Hampton Reserve Subdivision, Plat Book 33, Page 27 (the "Hampton Reserve Property"). The document vesting title to the Hampton Reserve Property in the Tennessee Trust was recorded with the Williamson County Register of Deeds at Book 4687, Pages 547-548, as Instrument No. 08046802 (the "Deed"). A true and accurate copy of the Deed is attached hereto as **Exhibit 4**.

11.     The Hampton Reserve Property is encumbered by a deed of trust (the "Deed of Trust") securing a loan from BANA (the "Promissory Note") to Kirk Leipzig, as borrower, in his individual capacity ("Leipzig"). The Deed of Trust and the Promissory Note (collectively, the "Mortgage Loan") was recorded with the Williamson County Register of Deeds at Book 4515, Pages 473-498, as Instrument No. 08011138. A true and accurate copy of the Mortgage Loan is attached hereto as **Exhibit 5**.

12.     The Mortgage Loan is a consumer debt that was incurred to purchase the Hampton Reserve Property and was used primarily for personal, family, and household purposes. Following its purchase, Leipzig lived in the Hampton Reserve Property as his primary residence and Leipzig secured a homeowner's insurance policy on the Hampton Reserve Property as an "owner occupied" dwelling. Since the origination of the Mortgage Loan the Foreclosing Parties and/or their predecessors in interest, BANA and ReconTrust, have known, have been aware, and have acknowledged that the Mortgage Loan is a consumer debt.

13.     In May 2010 the Tennessee Trust executed a residential lease under which the current residents, a family of five, have resided continuously without interruption to this day. The residential lease contains an option to purchase the Hampton Reserve Property in fee simple at any time during the Lease Term or any extension thereof (the "Purchase Option"). The Lease acknowledges the sum of Fifty Thousand Dollars ($50,000) as payment for the Purchase Option.

14.     In January 2011 the original lease was amended to reflect, among other things, the correct name of the individual residing in the Hampton Reserve Property, the correct address for the Tennessee Trust, the agreed-upon market value of and fair rental value for the Hampton Reserve Property, accounting

for the declining assessed and appraised values of the Hampton Reserve Property under current market conditions, and a modification of the monthly rental arrangement given the financial condition of the Tennessee Trust and Leipzig as represented by Leipzig (the "Lease"). The Lease is for a term of sixty (60) months commencing June 1, 2010, and ending May 31, 2015 (the "Lease Term").

15. The Purchase Option was exercised in January 2011 (the "Purchase Option Exercise"). Under the doctrine of equitable conversion the Purchase Option Exercise makes plaintiff the equitable owner of the Hampton Reserve Property, i.e., since January 2011 the Tennessee Trust has merely retained legal title to the Hampton Reserve Property.

16. A notice of the Lease and the Purchase Option was recorded with the Williamson County Register of Deeds at Book 5796, Pages 53-54, as Instrument No. 12057494 (the "Memorandum of Lease-Purchase Option"). On January 14, 2013, the tenant and equitable owner of the Hampton Reserve Property and the sole owner of plaintiff assigned equitable and beneficial interests in and to the Lease and Purchase Option to plaintiff. A true and accurate copy of the Memorandum of Lease-Purchase Option is attached hereto as **Exhibit 6**.

17. A notice of the exercise of the Purchase Option was recorded with the Williamson County Register of Deeds at Book 5868, Pages 649-650, as Instrument No. 13013137. A true and accurate copy of the notice of the Purchase Option Exercise is attached hereto as **Exhibit 7**.

18. The Purchase Option Exercise operates as an equitable conversion and plaintiff's interest in the Hampton Reserve Property under the Purchase Option became realty and the Tennessee Trust's interest therein became personalty until the time of closing.

19. Plaintiff is a creditor of Leipzig and the Tennessee Trust. Plaintiff is a permitted assignee under the Purchase Option and the holder of the right to purchase the Hampton Reserve Property during the Lease Term. Plaintiff benefits from and is an intended third-party beneficiary of the performance and promises, and has the right to enforce such performance and promises, under the Lease, the Purchase Option, the Purchase Option Exercise, the Property Owner's Affidavit, and the Mortgage Loan.

20.    ReconTrust Company, N.A. ("ReconTrust") is a California corporation permitted by the U.S. Office of the Comptroller of the Currency as a nondepository, uninsured, limited purpose national trust bank. ReconTrust is organized and existing under the laws of the State of California and is doing business in the State of Tennessee.  ReconTrust is a wholly owned subsidiary of BANA.

21.    ReconTrust is acting as a foreclosure trustee in the State of Tennessee. According to the Williamson County Register of Deeds, ReconTrust was appointed by BANA as substitute trustee under the Deed of Trust (the "Substitution of Trustee").  The Substitution of Trustee was recorded with the Williamson County Register of Deeds at Book 5779, Pages 22-23, as Instrument No. 12054463.  A true and accurate copy of the Substitution of Trustee is attached hereto as **Exhibit 8**.

22.    On February 6, 2013, plaintiff discovered, through research of an online Internet website for ReconTrust, the existence of a scheduled February 7, 2013, trustee's sale for the Hampton Reserve Property (the "Trustee's Sale").  With knowledge of one or more of the Foreclosing Parties the Trustee's Sale was initiated by BANA as holder of the Deed of Trust, through its substitute trustee, ReconTrust.

23.    On February 6, 2013, Carrington, BANA and ReconTrust acknowledged and confirmed their prior knowledge of the Lease, the Purchase Option and the exercise of the Purchase Option.  Following the scheduled Trustee's Sale the Tennessee Trust confirmed and reaffirmed in writing the Lease, the Purchase Option and the Purchase Option Exercise by executing a duly notarized affidavit (the "Property Owner's Affidavit").  The Property Owner's Affidavit was recorded with the Williamson County Register of Deeds at Book 6010, Pages 198-200, as Instrument No. 13038635.  A true and accurate copy of the Property Owner's Affidavit is attached hereto as **Exhibit 9**.

24.    In February 2013 Carrington, BANA and ReconTrust agreed to postpone the Trustee's Sale to March 25, 2013.  In March 2013 Carrington, BANA and ReconTrust agreed to indefinitely postpone the Trustee's Sale and, in addition, made representations and assurances that the Trustee's Sale would not take place, if at all, any sooner than October 2014 and that Carrington and BANA would work with plaintiff so that plaintiff would be provided an opportunity to purchase the Promissory Note or the Hampton Reserve Property before the end of the Lease Term.

25. Prior to February 6, 2013, Leipzig and the Tennessee Trust denied any knowledge of the scheduled Trustee's Sale and denied having received the required statutory notice of either the Trustee's Sale or any foreclosure sale date for the Hampton Reserve Property. Leipzig and the Tennessee Trust also denied knowledge of a default under the Mortgage Loan and denied that either BANA or anybody else ever sent Leipzig or the Tennessee Trust a notice of any such default. Prior to February 6, 2013, plaintiff had no knowledge of the Trustee's Sale, the foreclosure sale date for the Hampton Reserve Property, or any purported default under the Mortgage Loan.

26. Since February 2013 plaintiff has repeatedly offered to (1) pay the monthly rent due under the Lease directly to BANA and/or Carrington, and (2) pay for and remediate certain of the Tennessee Trust's obligations under the Lease, save and except the amounts due any lender of record for the first and second position property liens. Carrington and the Tennessee Trust refused plaintiff's offers.

## CLAIMS FOR RELIEF

### I

### VIOLATION OF THE
### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
### [As to Defendants B&S, Carrington, and Christiana Trust]

27. Paragraphs 1-26 above are hereby restated and incorporated herein.

28. Noting "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices," 15 U.S.C. § 1692(a), Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, in order to eliminate abusive practices in the debt collection industry and ensure that "those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. § 1692(e).

29. The FDCPA is a consumer-protection statute enacted in 1977, as Title VIII of the Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq*. The FDCPA regulates various practices pertaining to the collection of consumer debts by "debt collectors." The term "debt collector" is defined to include "any person … who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Foreclosing Parties are debt collectors under the

FDCPA.

30.     The FDCPA is liberally construed in favor of the consumer to effectuate its purposes.  Under the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3). Leipzig is a consumer under the FDCPA.

31.     Under the FDCPA, a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  All written and oral communications and representations of the Foreclosing Parties as described herein are communications under the FDCPA.

32.     Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).   The Mortgage Loan is a debt under the FDCPA.

33.     No Foreclosing Entity originated the Mortgage Loan and the Mortgage Loan was in default at the time it was purportedly obtained by and/or assigned to the Foreclosing Parties.

34.     The Foreclosing Parties, directly or indirectly through their agents and/or subagents, use instrumentalities of interstate commerce or the mails in their business, which includes the collection of debts.

35.      The Foreclosing Parties, directly or indirectly through their agents and/or subagents, collect debts after they have become delinquent.

36.     The Foreclosing Parties, directly or indirectly through their agents and/or subagents, regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

37.     The Foreclosing Parties, directly or indirectly through their agents and/or subagents, controls all aspects of the collection efforts vis-à-vis the Mortgage Loan and the Hampton Reserve Property.

38.     The Foreclosing Parties' activities as hereinabove described are considered debt collection under the FDCPA and such debt collection activities are within the scope of one or more agency and/or subagency relationships amongst the Foreclosing Parties.

39.    Under the FDCPA and the laws of this district (see, e.g., *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453 (6th Cir. 2013)) the ultimate purpose of foreclosure is the payment of money.   Under the FDCPA, if a purpose of an activity taken in relation to a debt is to obtain payment of the debt, the activity is properly considered debt collection.   Mortgage foreclosure is debt collection under the FDCPA.   The Foreclosing Parties are debt collectors under the FDCPA.

40.    Prior to the Trustee's Sale one or more of the Foreclosing Parties had actual and record notice of the Deed, the Lease, and the Purchase Option and actual notice of the exercise of the Purchase Option.

41.    Prior to purchasing the Mortgage Loan one or more of the Foreclosing Parties had actual and record notice of the Deed, the Lease, the Purchase Option, and the Purchase Option Exercise and actual notice of the Property Owner's Affidavit.

42.    Prior to publishing the Notices of Sale, the Foreclosing Parties had actual and record notice of the Deed, the Lease, the Purchase Option, the Purchase Option Exercise, and the Property Owner's Affidavit.

43.    The Lease, the Purchase Option, and the Purchase Option Exercise are subject to the Protecting Tenants at Foreclosure Act ("PTFA"), part of the Helping Families Save Their Homes Act.  Pub. L. No. 111-22, div. A, tit. VII, §§ 701-704, 123 Stat. 1632, 1660-62 (2009), *amended by* Pub. L. No. 111-203, tit. XIV, § 1484, 124 Stat. 1376, 2204 (2010).

44.    In addition, the Lease, the Purchase Option, and the Purchase Option Exercise are subject to the Tennessee Home Loan Protection Act, Tenn. Code Ann. §§ 45-20-101, *et seq.* (the "Tennessee HLPA"); and the Uniform Residential Landlord and Tenant Act, Tenn. Code Ann. §66-28-101, *et seq.* (the "Tennessee URLTA").

45.    Christiana Trust provides investment, fiduciary, agency, commercial domicile services and independent director's services for asset-backed securitization transactions from locations in the States of Delaware and Nevada.   Until July 21, 2011, the Office of Thrift Supervision regulated Christiana Trust, WSFS Financial Corporation and WSFS Bank.  As of July 21, 2011, WSFS Financial Corporation's primary federal regulator became the Federal Reserve and WSFS Bank and Christiana Trust's primary federal regulator became the Office of the Comptroller of the Currency.

46.    Foreclosure trustees are responsible for conducting non-judicial foreclosures, called trustee's sales, in accordance with Tenn. Code Ann. §§ 35-5-101 to 35-5-111.  B&S is acting as a foreclosure trustee in the State of Tennessee.

47.    B&S is a law firm that includes attorneys who regularly, frequently and consistently perform debt collection activities as part of their business services.

48.    The FDCPA prohibits taking "any action that cannot legally be taken or that is not intended to be taken," engaging in any conduct that would "[h]arass, oppress, or abuse any person in connection with the collection of a debt," and using "unfair or unconscionable means" or "false, deceptive, or misleading representation or means" in its debt collection activity.  Federal Trade Commission, *Staff Commentary on the FDCPA*, §§ 806, 807(5), 808.

49.    Pursuant to the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  Under the FDCPA, the application of 15 U.S.C. § 1692d is not limited to consumers.

50.    Pursuant to the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Under the FDCPA, the application of 15 U.S.C. § 1692e is not limited to consumers.

51.    Pursuant to the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Under the FDCPA, the application of 15 U.S.C. § 1692f is not limited to consumers.

52.    Tenn. Code Ann. § 35-5-101 requires that in any sale of land to foreclose a deed of trust, mortgage or other lien securing the payment of money or other thing of value or under judicial orders or process, an accurate and truthful advertisement of the sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made (the "Notices of Sale").

53.    In violation of 15 U.S.C. § 1692d and Tenn. Code Ann. § 35-5-101, the Foreclosing Parties failed to publish accurate and truthful first, second and third Notices of Sale for the Hampton Reserve Property by, among other things, falsely representing to plaintiff and to the public that Christiana Trust

appointed B&S, by an instrument duly recorded with the Register of Deeds, as substitute trustee when, in fact, ReconTrust was the substitute trustee of record appointed by BANA. A true and accurate copy of the first Notice of Sale is attached hereto as **Exhibit 2**.

54. In violation of 15 U.S.C. § 1692e and Tenn. Code Ann. § 35-5-101, the Foreclosing Parties failed to publish accurate and truthful Notices of Sale for the Hampton Reserve Property by, among other things, falsely representing to plaintiff and to the public that Christiana Trust appointed B&S, by an instrument duly recorded with the Register of Deeds, as substitute trustee when, in fact, ReconTrust was the substitute trustee of record appointed by BANA.

55. In violation of 15 U.S.C. § 1692f and Tenn. Code Ann. § 35-5-101, the Foreclosing Parties failed to publish accurate and truthful Notices of Sale for the Hampton Reserve Property by, among other things, falsely representing to plaintiff and to the public that Christiana Trust appointed B&S, by an instrument duly recorded with the Register of Deeds, as substitute trustee when, in fact, ReconTrust was the substitute trustee of record appointed by BANA.

56. After July 31, 2013, in contravention of 15 U.S.C. § 1692d, Carrington falsely represented to plaintiff that BANA was the lawful holder of the Mortgage Loan when, in fact, Christiana Trust was the purported lawful holder of the Mortgage Loan by what purports to be a "confidential" assignment not recorded and not disclosed by the Foreclosing Parties (the "Mortgage Assignment").

57. After July 31, 2013, in contravention of 15 U.S.C. § 1692e, Carrington falsely represented to plaintiff that BANA was the lawful holder of the Mortgage Loan when, in fact, Christiana Trust was the purported lawful holder of the Mortgage Loan by the Mortgage Assignment.

58. After July 31, 2013, in contravention of 15 U.S.C. § 1692f, Carrington falsely represented to plaintiff that BANA was the lawful holder of the Mortgage Loan when, in fact, Christiana Trust was the purported lawful holder of the Mortgage Loan by the Mortgage Assignment.

59. A true and accurate copy of the Mortgage Assignment is attached hereto as **Exhibit 3**. Although previously requested to do so, the Foreclosing Parties did not provide plaintiff, Leipzig or the Tennessee Trust with a copy of the Mortgage Assignment until after this legal action was commenced.

60.     Between January 2013, and October 2013, plaintiff, Leipzig and the Tennessee Trust engaged in good faith negations and communications with Carrington concerning the purchase and sale of the Promissory Note and, prior to November 2013, Carrington agreed to sell and plaintiff agreed to purchase the Promissory Note for $550,000.

61.     Plaintiff has conducted due diligence regarding the Hampton Reserve Property and plaintiff remains ready, willing and able to purchase the Promissory Note.

62.     During the aforementioned Promissory Note negotiations and in violation of 15 U.S.C. § 1692d, Carrington concealed the Mortgage Assignment from plaintiff, Leipzig and the Tennessee Trust and falsely represented to plaintiff that BANA was the holder of the Mortgage Loan, when BANA was not, and that Carrington was authorized to sell the Promissory Note to plaintiff.

63.     During the aforementioned Promissory Note negotiations and in violation of 15 U.S.C. § 1692e, Carrington concealed the Mortgage Assignment from plaintiff, Leipzig and the Tennessee Trust and falsely represented to plaintiff that BANA was the holder of the Mortgage Loan, when BANA was not, and that Carrington was authorized to sell the Promissory Note to plaintiff.

64.     During the aforementioned Promissory Note negotiations and in violation of 15 U.S.C. § 1692f, Carrington concealed the Mortgage Assignment from plaintiff, Leipzig and the Tennessee Trust and falsely represented to plaintiff that BANA was the holder of the Mortgage Loan, when BANA was not, and that Carrington was authorized to sell the Promissory Note to plaintiff.

65.     In contravention of 15 U.S.C. § 1692d, the Foreclosing Parties concealed from and did not disclose to plaintiff, Leipzig or the Tennessee Trust the intended or imminent sale of the Hampton Reserve Property but, instead intended to foreclose on the Hampton Reserve Property without first providing proper notice of the foreclosure sale to the title owner of the Hampton Reserve Property (i.e., the Tennessee Trust), the equitable owner of the Hampton Reserve Property (i.e., plaintiff), the residents of the Hampton Reserve Property, or the borrower under the Promissory Note.

66.     In contravention of 15 U.S.C. § 1692e, the Foreclosing Parties concealed from and did not disclose to plaintiff, Leipzig or the Tennessee Trust the intended or imminent sale of the Hampton Reserve

Property but, instead intended to foreclose on the Hampton Reserve Property without first providing proper notice of the foreclosure sale to the title owner of the Hampton Reserve Property (i.e., the Tennessee Trust), the equitable owner of the Hampton Reserve Property (i.e., plaintiff), the residents of the Hampton Reserve Property, or the borrower under the Promissory Note.

67.    In contravention of 15 U.S.C. § 1692f, the Foreclosing Parties concealed from and did not disclose to plaintiff, Leipzig or the Tennessee Trust the intended or imminent sale of the Hampton Reserve Property but, instead intended to foreclose on the Hampton Reserve Property without first providing proper notice of the foreclosure sale to the title owner of the Hampton Reserve Property (i.e., the Tennessee Trust), the equitable owner of the Hampton Reserve Property (i.e., plaintiff), the residents of the Hampton Reserve Property, or the borrower under the Promissory Note.

68.    In violation of 15 U.S.C. § 1692d and Tenn. Code Ann. § 35-5-101, the Foreclosing Parties did not properly notify plaintiff, Leipzig and the Tennessee Trust of foreclosure sale adjournments and/or postponements.

69.    In violation of 15 U.S.C. § 1692e and Tenn. Code Ann. § 35-5-101, the Foreclosing Parties did not properly notify plaintiff, Leipzig and the Tennessee Trust of foreclosure sale adjournments and/or postponements.

70.    In violation of 15 U.S.C. § 1692f and Tenn. Code Ann. § 35-5-101, the Foreclosing Parties did not properly notify plaintiff, Leipzig and the Tennessee Trust of foreclosure sale adjournments and/or postponements.

71.    Tenn. Code Ann. § 35-5-104 requires that the Notices of Sale give the names of all interested parties.

72.    In violation of 15 U.S.C. § 1692d and Tenn. Code Ann. § 35-5-104, the Foreclosing Parties failed to publish in the Notices of Sale or give all interested parties, including plaintiff, Leipzig and the Tennessee Trust, notice of the intended and imminent sale of the Hampton Reserve Property.

73.    In violation of 15 U.S.C. § 1692e and Tenn. Code Ann. § 35-5-104, the Foreclosing Parties failed to publish in the Notices of Sale or give all interested parties, including plaintiff, Leipzig and the

Tennessee Trust, notice of the intended and imminent sale of the Hampton Reserve Property.

74.     In violation of 15 U.S.C. § 1692f and Tenn. Code Ann. § 35-5-104, the Foreclosing Parties failed to publish in the Notices of Sale or give all interested parties, including plaintiff, Leipzig and the Tennessee Trust, notice of the intended and imminent sale of the Hampton Reserve Property.

75.     Under the PTFA, a tenant's lease survives the foreclosure and a tenant, regardless of the length of the lease term, is entitled to at least a 90-day notice to vacate. *Id.*  Congress passed the PTFA in order to stop the "rampage of sudden evictions of renters" caused by foreclosure and to "help unsuspecting renters from falling victims to foreclosure in which they played absolutely no part." 155 Cong. Rec. S5174 (daily ed. May 6, 2009) (statement of Sen. Kerry).  "When a bank takes title to a house after foreclosure, it must honor any existing rental agreement with a bona fide tenant and must provide 90 days' notice to the tenant prior to eviction whether or not the tenant has a rental agreement."  Office of Comptroller of the Currency, Bulletin OCC 2011-49 (Dec. 14, 2011). Likewise, the Department of Housing and Urban Development issued guidance stating that "successors take their interest subject to the remaining term of any bona fide lease." Protecting Tenants at Foreclosure: Notice of Responsibility Placed on Immediate Successors in Interest Pursuant to Foreclosure of Residential Property, 74 Fed. Reg. 30,106, 30,106 (June 24, 2009).

76.     In contravention of 15 U.S.C. § 1692d and section 702(a) of the PTFA the Foreclosing Parties falsely represented to plaintiff that foreclosure of the Hampton Reserve Property extinguishes plaintiff and the tenant's legal and equitable rights under the Lease, the Purchase Option, and the Purchase Option Exercise.

77.     In contravention of 15 U.S.C. § 1692e and section 702(a) of the PTFA the Foreclosing Parties falsely represented to plaintiff that foreclosure of the Hampton Reserve Property extinguishes plaintiff and the tenant's legal and equitable rights under the Lease, the Purchase Option, and the Purchase Option Exercise.

78.     In contravention of 15 U.S.C. § 1692f and section 702(a) of the PTFA the Foreclosing Parties falsely represented to plaintiff that foreclosure of the Hampton Reserve Property extinguishes plaintiff and the tenant's legal and equitable rights under the Lease, the Purchase Option, and the Purchase Option

Exercise.

79. The Mortgage Loan, section 18, requires that all notices of acceleration and opportunity to cure be in writing, see section 15 thereunder, and properly and timely given and mailed to the borrower (the "Acceleration Notice Provision").

80. In violation of 15 U.S.C. § 1692d and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the Acceleration Notice Provision.

81. In violation of 15 U.S.C. § 1692e and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the Acceleration Notice Provision.

82. In violation of 15 U.S.C. § 1692f and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the Acceleration Notice Provision.

83. The Mortgage Loan, section 22, requires that all notices of sale by public advertisement be in writing, see section 15 thereunder, and properly and timely given and mailed to the borrower (the "Public Sale Notice Provision").

84. In violation of 15 U.S.C. § 1692d and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the Public Sale Notice Provision.

85. In violation of 15 U.S.C. § 1692e and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the Public Sale Notice Provision.

86. In violation of 15 U.S.C. § 1692f and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the Public Sale Notice Provision.

87. The Mortgage Loan, section 20, requires that if there is a change of the loan servicer, the borrower will be given written notice of the change which will state the name and address of the new loan servicer, the address to which payments should be made and any other information the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*., requires in connection with a notice of transfer of servicing (the "RESPA Notice Provision").

88. In violation of 15 U.S.C. § 1692d, RESPA and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the RESPA Provision.

89. In violation of 15 U.S.C. § 1692e, RESPA and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the RESPA Notice Provision.

90. In violation of 15 U.S.C. § 1692f, RESPA and the Mortgage Loan, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely complied with the RESPA Notice Provision.

91. Pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f)(2), the Foreclosing Parties must provide, if requested, the following information: (1) The identity, address and telephone number of the new creditor; (2) the date of transfer of the Mortgage Loan; (3) how to reach an agent or party having authority to act on behalf of the new creditor; (4) the location of the place where transfer of ownership of the Mortgage Loan is recorded; (5) any other relevant information regarding the new creditor; and (6) the identity of the owner(s) of the Mortgage Loan (the "TILA Notice").

92. In violation of 15 U.S.C. § 1692d and TILA, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely provided the TILA Notice.

93. In violation of 15 U.S.C. § 1692e and TILA, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely provided the TILA Notice.

94. In violation of 15 U.S.C. § 1692f and TILA, the Foreclosing Parties falsely represented to plaintiff that the Foreclosing Parties properly and timely provided the TILA Notice.

95. The Foreclosing Parties falsely represented that the entire indebtedness had been declared due and payable as provided in the Mortgage Loan.

96. The Foreclosing Parties falsely represented to plaintiff that the Tennessee Trust was not the proper title owner of the Hampton Reserve Property.

97. The Foreclosing Parties falsely represented to plaintiff that plaintiff was not the equitable owner of the Hampton Reserve Property.

98. Tenn. Code Ann. § 35-5-107 provides that any officer or other person referenced in Tenn. Code Ann. § 35-5-106 who fails to comply with the provisions of Tenn. Code Ann. § 35-5-101, *et seq*. commits a Class C misdemeanor and is liable to the party injured by the noncompliance, for all damages resulting from the failure. The Foreclosing Parties and their respective officers, representatives and attorneys are subject to the provisions of Tenn. Code Ann. § 35-5-107.

99. Tenn. Code Ann. § 45-20-103 provides that a lender or servicer of a high-cost home loan shall provide a borrower or the borrower's designated agent, upon request, two (2) pay-off statements within any twelve-month period, free of charge (the "Pay-Off Statements").

100. In violation of 15 U.S.C. § 1692d and Tenn. Code Ann. § 45-20-103, one or more of the Foreclosing Parties were requested but refused to provide the required Pay-Off Statements to plaintiff, Leipzig or the Tennessee Trust until after the Foreclosing Parties were provided a copy of plaintiff's imminent legal action.

101. In violation of 15 U.S.C. § 1692f and Tenn. Code Ann. § 45-20-103, one or more of the Foreclosing Parties were requested but refused to provide the required Pay-Off Statements to plaintiff, Leipzig or the Tennessee Trust until after the Foreclosing Parties were provided a copy of plaintiff's imminent legal action.

102. In violation of 15 U.S.C. § 1692f and Tenn. Code Ann. § 45-20-103, one or more of the Foreclosing Parties were requested but refused to provide the required Pay-Off Statements to plaintiff, Leipzig or the Tennessee Trust until after the Foreclosing Parties were provided a copy of plaintiff's imminent legal action.

103.   Between January 2013 and November 2013 plaintiff and Leipzig communicated with BANA and Carrington concerning the Mortgage Loan and the Hampton Reserve Property.  During such discussions he Foreclosing Parties made false, deceptive and misleading representations, promises and assurances to and concealed from plaintiff and Leipzig significant material matters regarding the Mortgage Loan, including the Promissory Note and the Deed of Trust, and the Hampton Reserve Property.  Such  representations, promises, assurances and concealments include, but are not limited to, material matters regarding the ownership, servicing and provenance of the Mortgage Loan, the amounts due thereunder, the status of any nonjudicial sale of the Hampton Reserve Property, and the sale of the Promissory Note to plaintiff.

104.   For example, during telephone conversations in February 2013 and in September 2013 Carrington's authorized representative in southern California, Tiffany Johnson, represented to and confirmed with plaintiff that the Promissory Note could and would be sold to plaintiff, that Carrington was authorized to negotiate for the sale of the Promissory Note to plaintiff, that BANA owned the Mortgage Loan, and that the Trustee's Sale was first postponed from February 7, 2013, to March 25, 2013, then from March 25, 2013, to no earlier than October 2014, and then indefinitely.

105.   In October 2013 and unbeknownst to plaintiff, Leipzig or the Tennessee Trust the Foreclosing Parties again initiated foreclosure proceedings against the Hampton Reserve Property (the "Foreclosure") in contravention of the aforementioned provisions and/or interpretations of the FDCPA, the Tennessee Code, Sixth Circuit law and the Mortgage Loan.

106.   In November 2013 the Foreclosing Parties represented to plaintiff that the Foreclosure would be cancelled due in part to the legal deficiencies, representations and concealments attendant to the procedures used in and preceding the foreclosure proceedings, the uncertainties surrounding the purchase and sale of the Promissory Note, and the prior representations made by the Foreclosing Parties and BANA to plaintiff, to Leipzig, to the Tennessee Trust, and to the public concerning various matters relating to the Mortgage Loan, the Hampton Reserve Property, their legal status, plaintiff's equitable ownership of title, and the Foreclosure.

107. The Foreclosing Parties continued and continue their unlawful debt collection efforts even after plaintiff put them on notice of Leipzig's fraudulent scheme, as hereinafter described, in which certain of the Foreclosing Parties were complicit and after plaintiff put them on notice that the Tennessee Trust, not Leipzig, holds proper title to the Hampton Reserve Property and that plaintiff is the equitable owner of the Hampton Reserve Property.

108. Any debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person. 15 U.S.C. § 1692k(a).

109. Under the FDCPA, recovery of statutory or actual damages for violations of the FDCPA is permitted. 15 U.S.C. § 1692e.

110. When engaging in the acts as set forth hereinabove, the Foreclosing Parties, and each of them, acted maliciously, i.e., with ill will, hatred and/or spite. The Foreclosing Parties' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to consequences can be implied.

111. The Foreclosing Parties' wrongful acts as alleged herein have caused and are causing damage to plaintiff. As a direct and proximate result of the aforementioned acts, plaintiff has suffered compensatory and consequential damages of at least $750,000. Under the FDCPA statutory damages are recoverable for violations, whether or not actual damages are proven. Plaintiff also is entitled to an award of exemplary and punitive damages of at least $3,750,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair and bad faith conduct.

## II

### VIOLATION OF THE
### FEDERAL AND STATE UNIFORM FRAUDULENT TRANSFER ACTS;
### FRAUD AND MISREPRESENTATION; CONSPIRACY TO COMMIT FRAUD
### [As to all Defendants]

112. Paragraphs 1-111 above are hereby restated and incorporated herein.

113. The Uniform Fraudulent Conveyance Act ("UFCA") was promulgated by the Conference of Commissioners on Uniform State Laws in 1918. The UFCA has been adopted in the sections of the Bankruptcy Act of 1938 and the Bankruptcy Reform Act of 1978 that deal with fraudulent transfers and

obligations. The UFCA was a codification of decisions applying the Statute of 13 Elizabeth. *See, e.g.,* Analysis of H.R. 12339, 74th Cong., 2d Sess. 213 (1936). The basic structure and approach of the UFCA are preserved in the Uniform Fraudulent Transfer Act of ("UFTA").

114. The UFTA declares a transfer made or an obligation incurred with actual intent to hinder, delay, or defraud creditors to be fraudulent. The UFTA renders a transfer made or obligation incurred without adequate consideration to be constructively fraudulent, i.e., without regard to the actual intent of the parties, under one of the following conditions: (1) the debtor was left by the transfer or obligation with unreasonably small assets for a transaction or the business in which he was engaged; (2) the debtor intended to incur, or believed that he would incur, more debts than he would be able to pay; or (3) the debtor was insolvent at the time or as a result of the transfer or obligation.

115. A transfer or obligation that is constructively fraudulent because insolvency concurs with or follows failure to receive adequate consideration is voidable only by a creditor in existence at the time the transfer occurs or the obligation is incurred. Either an existing or subsequent creditor may avoid a transfer or obligation for inadequate consideration when accompanied by the financial condition.

116. Tenn. Code Ann. § 66-3-301, *et seq.*, the Tennessee Uniform Fraudulent Transfer Act (the "TUFTA") addresses fraudulent conveyances and devices. The TUFTA, like the UFTA, provides that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred.

117. Pursuant to Tenn. Code Ann. § 35-5-101, "In any sale of land to foreclose a deed of trust, mortgage, or other lien securing the payment of money or other thing of value or under judicial orders of process, the trustee or other party that sells the property shall send to the debtor and any co-debtor a copy of the notice required in § 35-5-104. The notice shall be sent on or before the first date of publication provided in subsection (b) by registered or certified mail, return receipt requested."

118. Tenn. Code Ann. § 66-3-101 provides:

> Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to

delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, such person's heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding.

119.  Tenn. Code Ann. § 66-3-201 provides:

All devises of lands, tenements, and hereditaments, or of any rent, profit, term, or charge out of the same, contrived and made to defraud creditors of their just debts, shall be deemed and taken to be null and void only as against such creditors, their heirs, successors, executors, administrators, and assigns, and every one of them.

120.  Tenn. Code Ann. § 66-3-308 provides:

In an action for relief against a transfer or obligation under this part, a creditor, subject to the limitations in § 66-3-309, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by title 26; (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure: … (C) Any other relief the circumstances may require.

121.  In or about November 2011 Leipzig in his individual capacity, but not the Tennessee Trust, was threatened by an attorney with a civil action and potential criminal prosecution for allegedly orchestrating and participating in a Ponzi scheme to defraud those represented by the attorney and with whom Leipzig apparently had financial dealings (the "First Ponzi Case").  Soon thereafter the First Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the First Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse.

122.  In or about June 2012 Leipzig in his individual capacity, but not the Tennessee Trust, was again threatened by an attorney with a civil action and potential criminal prosecution for allegedly orchestrating and participating in a Ponzi scheme to defraud those represented by the attorney and with

whom Leipzig apparently had financial dealings (the "Second Ponzi Case"). Soon thereafter the Second Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the Second Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse.

123. In or about January 2013 Leipzig in his individual capacity, but not the Tennessee Trust, was again threatened by an attorney with a civil action and potential criminal prosecution for allegedly orchestrating and participating in a Ponzi scheme to defraud those represented by the attorney and with whom Leipzig apparently had financial dealings (the "Third Ponzi Case"). Soon thereafter the Third Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the Third Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse.

124. In or about March 2013 Leipzig in his individual capacity, but not the Tennessee Trust, was again threatened by an attorney with a civil action and potential criminal prosecution for allegedly orchestrating and participating in a Ponzi scheme to defraud those represented by the attorney and with whom Leipzig apparently had financial dealings (the "Fourth Ponzi Case"). Soon thereafter the Fourth Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the Fourth Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse.

125. In or about May 2013 Leipzig in his individual capacity, but not the Tennessee Trust, was again implicated in alleged illegal real estate activities concerning residential property located in Davidson County, Tennessee (the "Fifth Ponzi Case"). Soon thereafter the Fifth Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the Fifth

Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse. A true and accurate copy of the newspaper article identifying the alleged fraudulent scheme is attached hereto as **Exhibit 11**.

126. In or about June 2013 Leipzig in his individual capacity, but not the Tennessee Trust, was again threatened by an attorney with a civil action and potential criminal prosecution for allegedly orchestrating and participating in a Ponzi scheme to defraud those represented by the attorney and with whom Leipzig apparently had financial dealings (the "Sixth Ponzi Case"). Soon thereafter the Sixth Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the Sixth Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse.

127. In or about August 2013 Leipzig in his individual capacity, but not the Tennessee Trust, was again threatened by an attorney with a civil action and potential criminal prosecution for allegedly orchestrating and participating in a Ponzi scheme to defraud those represented by the attorney and with whom Leipzig apparently had financial dealings (the "Seventh Ponzi Case"). Soon thereafter the Seventh Ponzi Case settled with monies Leipzig borrowed and/or otherwise secured from one or more third parties. Leipzig, personally and on behalf of the Tennessee Trust, represented and provided assurances that the allegations related to the Seventh Ponzi Case were false and that no basis existed for any other potential or similar instances of alleged wrongdoing and abuse.

128. Home Equity Asset Partners, LLC ("HEAP") is a Delaware limited liability company formed in October 2010 (the "Formation Date").

129. HEAP is the record owner of certain residential real property located at 6261 Hillsboro Road, Nashville, Tennessee 37215 (the "Hillsboro Property").

130. Leipzig is a member, and managing member, of HEAP and has been a member of HEAP since the Formation Date.

131. In March 2013, before completion of the real property improvements thereto, Leipzig represented to plaintiff that the Hillsboro Property had an agreed market value of approximately $5,000,000 and that HEAP had a combined members' net equity value in excess of $2,000,000.

132. Between July 2012 and September 2013 Leipzig represented to plaintiff that he borrowed and/or made arrangements to borrow money from third parties for the purpose of making payments on the debt encumbering the Hampton Reserve Property, including the Mortgage Loan. Plaintiff later learned that Leipzig's representations were false and that Leipzig instead borrowed and/or made arrangements to borrow money from third parties for the purpose of making payments to persons and/or entities from whom he previously received investment monies and/or borrowed funds including, but not limited to, paying amounts Leipzig represented were necessary to make the above-referenced Ponzi Cases and the attorneys involved go away (the "Payoffs").

133. Between January 2012 and September 2013 Leipzig concealed from plaintiff that he and/or the Tennessee Trust transferred and/or made arrangements to transfer real estate and/or security interests by and amongst third parties for the purpose of avoiding and evading possible and/or anticipated debt collection activities relating to the Mortgage Loan and subordinate liens on the Hampton Reserve Property and/or other real estate controlled by Leipzig including, but not limited to, providing security interests in real estate owned by HEAP so as to secure funds borrowed from and/or paid by third parties on Leipzig's behalf as set forth hereinabove (the "Fraudulent Transfers"). True and accurate copies of examples of such Fraudulent Transfers are attached hereto as **Exhibit 12** and **Exhibit 13**.

134. Leipzig represented that by virtue of his past and present associations and affiliations with HEAP, third party investors and various publicly traded and privately held companies (the "Businesses"), he, the Tennessee Trust and third parties have been privy to and have had access to certain material information (the "Business Information") that enabled him and his companies to reap significant profits through the buying and selling of investments in the Businesses and real estate.

135. Leipzig represented that he profited from his investments and interests in the Businesses and real estate by trading on the basis of and by virtue of his knowledge of the Business Information.

136.  Leipzig made representations, promises and assurances to plaintiff and its predecessor-in-interest from January 2011 through August 2013 relating to the purchase of the Mortgage Loan and the junior liens on the Hampton Reserve Property with monies and profits made and to be made by Leipzig from his interests in HEAP, the Hillsboro Property, the Businesses and real estate.

137.  Since the Trustee's Sale Leipzig represented to plaintiff that Leipzig made "several hundreds of thousands of dollars" as a result of his knowledge of the Business Information vis-à-vis investing in the Businesses.

138.  Since the Trustee's Sale Leipzig and the Tennessee Trust represented to plaintiff that Leipzig would use at least $667,000 of the profits made by and equity interests in HEAP and the Businesses toward the purchase of the Mortgage Loan and reduction of the junior liens on the Hampton Reserve Property. Leipzig and the Tennessee Trust failed and refused, and continue to fail and refuse, to perform their promises and assure their performance as agreed.

139.  Leipzig, the Tennessee Trust and HEAP represented to plaintiff and its predecessor in interest that they would not to place, or allow to be placed, any additional liens or encumbrances on or against the Hillsboro Property or any HEAP member interest or otherwise use the Hillsboro Property or HEAP or allow the Hillsboro Property or any HEAP member interest to be used as collateral for any additional financing or lending arrangement whatsoever.

140.  Leipzig, the Tennessee Trust and HEAP representations not to place, or allow to be placed, any additional liens or encumbrances on or against the Hillsboro Property or any HEAP member interest or otherwise use the Hillsboro Property or HEAP or allow the Hillsboro Property or any HEAP member interest to be used as collateral for any additional financing or lending arrangement whatsoever were false. Consequently, plaintiff has legal and equitable claims against Leipzig, the Tennessee Trust, HEAP, the Hillsboro Property, and the Hampton Reserve Property for false representations and fraudulent and unauthorized transfers as provided under, among other things, the UFTA and the TUFTA.

141.  The obligations, Payoffs and the Fraudulent Transfers orchestrated by Leipzig and/or the Tennessee Trust (the "Transfers") (1) were to one or more insiders; (2) Leipzig and/or the Tennessee Trust

retained possession or control of the secured properties after the Transfers were made or obligations were incurred; (3) the Transfers were not disclosed or concealed; (4) before the Transfers were made or obligations were incurred, Leipzig was sued or threatened with suit; (5) the Transfers were of substantially all of Leipzig and/or the Tennessee Trust's assets; (6) Leipzig absconded; (7) Leipzig removed and/or concealed assets; (8) Leipzig and/or the Tennessee Trust was insolvent or became insolvent shortly after the Transfers were made or the obligations were incurred; (9) the Transfers occurred shortly before or shortly after a substantial debt was expected to be incurred; and/or (10) Leipzig had effectively transferred the essential assets of HEAP or security interests in its assets to an insider or affiliate of HEAP.

142. As a consequence of the liens, security interests, obligations, Payoffs and the Fraudulent Transfers orchestrated by Leipzig and/or the Tennessee Trust (1) Leipzig, the Tennessee Trust and/or HEAP were left by the transfers or obligations with unreasonably small assets for a transaction or the business in which they were engaged; (2) Leipzig, the Tennessee Trust and/or HEAP intended to incur, or believed that they would incur, more debts than they would be able to pay; and (3) Leipzig, the Tennessee Trust and/or HEAP were insolvent at the time or as a result of the transfers or obligations.

143. The liens, security interests, obligations and Transfers orchestrated by Leipzig were made and/or incurred with the actual intent to hinder, delay or defraud plaintiff and others. Further, Leipzig did not receive reasonably equivalent value in exchange for the transfers and Leipzig was then insolvent or became insolvent as a result of the liens, security interests, obligations and Transfers.

144. At the time defendants made their representations, promises and assurances they knew or should have known that their representations, promises and/or assurances were false. At the time the Foreclosing Parties purchased the Mortgage Loan from BANA they knew or should have known that the Tennessee Trust holds legal title to the Hampton Reserve Property and that plaintiff and its predecessor in interest have been and are bona fide good faith purchasers for value of the Hampton Reserve Property and the equitable owners of title to the Hampton Reserve Property as a matter of law and as provided in the recorded Lease, Purchase Option, Purchase Option Exercise and Property Owner's Affidavit. Defendants' fraudulent intent is evidenced by their unsubstantiated and undisclosed positions and activities regarding the

ownership, servicing and provenance of the Mortgage Loan and the purchase/sale and orchestrated foreclosure thereof.

145. The actions of defendants and those acting on their behalves and/or in concert with them (the "Coconspirators") constitute a common design between two or more persons to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means. Such overt acts of the Coconspirators in furtherance of said conspiracy resulting in injury to plaintiff include those set forth hereinabove and which constitute acts of wrongful inducement, persuasion, misrepresentation and/or other means to induce, procure and/or accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, e.g., the foreclosure sale of the Hampton Reserve Property in contravention of plaintiff and other parties' rights under and pursuant to the applicable laws, rules and regulations.

146. Plaintiff justifiably relied upon defendants' false and misleading representations and promises regarding the ownership, servicing and provenance of the Mortgage Loan and the junior liens and the amounts due thereunder, as well as the purchase and sale of the Promissory Note and the forbearance and postponement of any collection efforts vis-à-vis the Mortgage Loan, to plaintiff's detriment and as a direct and proximate result plaintiff has suffered damages including, but not limited to, plaintiff's right to otherwise sell its legal, equitable and/or beneficial rights in the Lease, the Purchase Option, the Purchase Option Exercise, and the Hampton Reserve Property.

147. Defendants' wrongful acts as alleged herein for fraud, constructive fraud, concealment, promissory fraud, intentional misrepresentations, and/or negligent misrepresentations have caused and are causing damage to plaintiff.

148. When engaging in the acts as set forth hereinabove, defendants, and each of them, acted maliciously, i.e., with ill will, hatred and/or spite. Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to consequences can be implied. Defendants' wrongful acts as alleged herein have caused and are causing damage to plaintiff. As a direct and proximate result of the aforementioned acts, plaintiff has suffered compensatory and consequential damages of at least $750,000. Plaintiff also is entitled to an award of exemplary and punitive damages of at least

$3,750,000 as necessary to punish and deter defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair and bad faith conduct.

**III**

**LIBEL/DISPARAGEMENT OF TITLE AND QUIET TITLE TO REAL PROPERTY**
**[As to Defendants B&S, Carrington, and Christiana Trust]**

149.   Paragraphs 1-148 above are hereby restated and incorporated herein.

150.   Plaintiff has legal and equitable interests in and to the Lease, the Purchase Option, the Purchase Option Exercise and the Hampton Reserve Property.

151.   The Foreclosing Parties published false statements about the title to the Hampton Reserve Property, e.g., the ownership of the Mortgage Loan, the right and standing to engage in debt collection efforts regarding the Mortgage Loan, and the procedural and substantive rights and standing to foreclose on the Hampton Reserve Property. The Foreclosing Parties have not established the validity of the Mortgage Loan, that they are the lawful holder and/or owner of the Mortgage Loan, or that they have the right to enforce the Mortgage Loan, through assignment, transfer, foreclosure or otherwise or without following collection efforts, including foreclosure procedures, as provided by state and federal laws.

152.   The Foreclosing Parties have not provided plaintiff with competent and persuasive evidence to support their claim to a secured interest in and/or to the Hampton Reserve Property or their right to foreclose as provided by statute and state laws.

153.   The Foreclosing Parties have not provided plaintiff with competent and persuasive evidence to support their standing to assert and/or defend a secured interest in and/or to the Hampton Reserve Property.

154.   The Foreclosing Parties have not performed all conditions precedent to enforcement procedures relating to the Mortgage Loan and/or the Deed of Trust encumbering the Hampton Reserve Property.

155.   There is no proof of a chain of title establishing that any Foreclosing Entity has a valid and perfected security interest in and/or to the Hampton Reserve Property or the substantive or procedural right to foreclose on the Hampton Reserve Property.

156. The Foreclosing Parties claim that they are the rightful owner(s) of the Mortgage Loan and have the substantive and procedural rights to foreclose on the Hampton Reserve Property and plaintiff disputes these claims.

157. The claims of the Foreclosing Parties are clouds on title to the Hampton Reserve Property.

158. When engaging in the acts as set forth hereinabove, the Foreclosing Parties, and each of them, acted maliciously, i.e., with ill will, hatred and/or spite. The Foreclosing Parties' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to consequences can be implied.

159. The Foreclosing Parties' wrongful acts as alleged herein have caused and are causing damage to plaintiff. As a direct and proximate result of the aforementioned acts, plaintiff has suffered compensatory and consequential damages of at least $750,000. Under the FDCPA statutory damages are recoverable for violations, whether or not actual damages are proven. Plaintiff also is entitled to an award of exemplary and punitive damages of at least $3,750,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair and bad faith conduct.

## IV

## DECLARATORY JUDGMENT
### [As to all Defendants]

160. Paragraphs 1-159 above are hereby restated and incorporated herein.

161. The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, *et seq*., provides:

(a) In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

162. Plaintiff has legal and equitable ownership interests and claims in and to the Lease, the Purchase Option and the Purchase Option Exercise, as confirmed by, among other things, the Property Owner's Affidavit (collectively, the "Residential Lease Documents").

163. Plaintiff claims that pursuant to section 702(a) of the PTFA and the FDCPA and as a consequence of defendants' debt collection and other related activities referenced hereinabove the

foreclosure of the Hampton Reserve Property does not extinguish either plaintiff or the tenant's legal and equitable rights under the Residential Lease Documents as conferred by the PTFA.

164. Plaintiff claims that pursuant to Tenn. Code Ann. § 35-5-107 all of defendants' officers and other persons referenced in Tenn. Code Ann. § 35-5-106 who fail to comply with the provisions of Tenn. Code Ann. § 35-5-101, *et seq*., commits a Class C misdemeanor and is liable to the parties injured by the noncompliance, including plaintiff, for all damages resulting from the failure.

165. Plaintiff claims that under Tennessee law the fair market value of the Hampton Reserve Property and any consideration paid therefor should be based upon the Hampton Reserve Property as encumbered by the Residential Lease Documents and the rights and privileges thereunder.

166. Defendants claim that pursuant to section 702(a) of the PTFA and the FDCPA and as a consequence of their debt collection and other related activities referenced hereinabove the foreclosure of the Hampton Reserve Property does extinguish both plaintiff and the tenant's legal and equitable rights under the Residential Lease Documents as conferred by the PTFA.

167. Defendants claim that pursuant to Tenn. Code Ann. § 35-5-107 none of defendants' officers and other persons referenced in Tenn. Code Ann. § 35-5-106 who fail to comply with the provisions of Tenn. Code Ann. § 35-5-101, *et seq*., commits a Class C misdemeanor and is liable to the parties injured by the noncompliance, including plaintiff, for all damages resulting from the failure.

168. Defendants claim that under Tennessee law the fair market value of the Hampton Reserve Property and any consideration paid therefor should not be based upon the Hampton Reserve Property as encumbered by the Residential Lease Documents and the rights and privileges thereunder.

169. An actual, substantial and continuing justiciable case and controversy exists between plaintiff, on the one hand, and defendants, on the other hand, based on competing claims to and rights, privileges and obligations arising under and from the Residential Lease Documents and federal and state laws.

170. Plaintiff has been injured and damaged by defendants' claims and accusations concerning and relating to the Residential Lease Documents and the Hampton Reserve Property.

171. Declaratory relief is appropriate and necessary to establish that the foreclosure of the Hampton Reserve Property does not extinguish either plaintiff or the tenant's legal and equitable rights under the Residential Lease Documents and that defendants and third parties can be held individually and personally liable to plaintiff for their violations of the referenced laws.

172. Pursuant to the DJA, 28 U.S.C. §§ 2201, *et seq*., and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29- 14-101, *et seq*., plaintiff requests a declaratory judgment that (1) the foreclosure of the Hampton Reserve Property does not extinguish either plaintiff or the tenant's legal and equitable rights under the Residential Lease Documents as conferred by the PTFA; (2) defendants and third parties can be held individually and personally liable to plaintiff for their violations of the referenced laws; and (3) the fair market value of the Hampton Reserve Property and any consideration paid therefor should be based upon the Hampton Reserve Property as encumbered by the Residential Lease Documents and the rights and privileges thereunder.

## V

## TEMPORARY AND PERMANENT INJUNCTION
### [As to Defendants Carrington, B&S and Christiana Trust]

173. Paragraphs 1-172 above are hereby restated and incorporated herein.

174. The Hampton Reserve Property, the Lease, the Purchase Option and the Purchase Option Exercise are innately unique and money damages will be inadequate to redress a deprivation of any legal and/or equitable interests therein. Plaintiff has no other adequate remedy at law and the injunctive relief prayed for is necessary and appropriate at this time to prevent irreparable loss to plaintiff. Plaintiff has suffered and will continue to suffer in the future unless the Foreclosing Parties' wrongful conduct, e.g., their foreclosure and unlawful debt collection practices, is restrained and enjoined and it is and will be impossible for plaintiff to determine the precise amount of damage plaintiff will suffer.

175. The Foreclosing Parties and their authorized representatives are aware of and have knowledge of their unlawful and improper acts as described hereinabove, including the debt collection and foreclosure actions as set forth above.

176. Unless enjoined by this Court, plaintiff's rights will continue to be violated by the Foreclosing Parties and/or others. Adequate compensatory or other corrective relief will not be sufficient or available at a later date to remedy the unlawful and improper acts as described hereinabove. Plaintiff's damages are inadequate at law and monetary damages would not afford them adequate relief. Further, there is a substantial threat that plaintiff will suffer irreparable harm unless injunctive relief is granted; the threatened injury to plaintiff if the injunctive relief is denied outweighs the possible harm to the Foreclosing Parties and others if relief is granted; and the issuance of injunctive relief in plaintiff's favor will serve the public interest.

177. Accordingly, the plaintiff seeks a temporary and permanent injunction against the Foreclosing Parties and others acting in concert and/or in cooperation with any of them, pursuant to applicable state and federal laws, including Fed. R. Civ. P. 65.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

a. Judgment be entered in plaintiff's favor as to each and every claim in this First Amended Complaint;

b. For compensatory damages in an amount to be determined according to proof;

c. For consequential damages in an amount to be determined according to proof;

d. For punitive damages as requested herein in an amount as provided by law;

e. For treble damages as requested herein in an amount as provided by law;

f. For statutory damages as requested herein in an amount as provided by law;

g. For declaratory relief as requested herein and as provided by law;

h. For injunctive relief as requested herein and as provided by law;

i. For quiet title to the Hampton Reserve Property as requested herein and as provided by law;

j. For reasonable attorneys' fees and costs; and

k.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:  */s/ Scott D. Johannessen*
_____

Scott D. Johannessen, BPR # 26767
LAW OFFICES OF SCOTT D. JOHANNESSEN
3200 West End Avenue, Suite 500
Nashville, TN 37203
Telephone:  877.863.5400
Facsimile:   877.863.5401
E-Mail:       scott@sdjnet.com
Web:          www.sdjnet.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.01, the undersigned hereby certifies that on the 9th day of February 2014 a true and correct copy of the following document:

FIRST AMENDED COMPLAINT

was delivered to the following persons/entities appearing of record herein via electronic mail through the Court's ECF system and, if not appearing of record herein, via regular United States first class mail:

Nicholas H. Adler                     Kirk Leipzig
Brock & Scott, PLLC                   Leipzig Living Trust
277 Mallory Station Road, Suite 115   6261 Hillsboro Road
Nashville, TN 37067                   Nashville, TN 37215


By:   _/s/ Scott D. Johannessen_____
        Scott D. Johannessen