# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANARION INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:14-cv-00012 |
| ) | Judge Aleta A. Trauger |
| v. ) | |
| ) | |
| CARRINGTON MORTGAGE SERVICES; ) | |
| BROCK & SCOTT, PLLC; CHRISTIANA ) | |
| TRUST; and LEIPZIG LIVING TRUST, ) | |
| ) | |
| Defendants, ) | |

## MEMORANDUM

Pursuant to Rules 12(b)(1) and 12(b)(6), the defendants (other than the Leipzig Living Trust) have filed a Motion to Dismiss claims asserted by the plaintiff, Anarion Investments, LLC ("Anarion"). (Docket No. 19.) For the reasons stated herein, the court finds that Anarion has failed to state a claim against the Defendants under the FDCPA, and the court will decline to exercise supplemental jurisdiction over the remaining state law claims.

## BACKGROUND[1]

This case concerns a residential property located in Brentwood, Tennessee (the "Property"). As noted previously, Anarion's pleadings and legal theories are not a model of

---

[1] The court's previous opinion concerning Anarion's requests for a preliminary injunction (Docket No. 64) includes a detailed description of the procedural history and facts of this case. Unless otherwise noted, the facts stated herein are drawn from the Amended Complaint, documents attached thereto, and documents incorporated by reference into the Amended Complaint.

1

clarity. However, given that Anarion lacks statutory standing to sue under the FDCPA based on its status as an LLC, the court will limit its summary to the basic allegations in the case.[2]

Briefly, on March 18, 2008, Bank of America, N.A. ("BANA") entered into a Deed of Trust with Kirk Leipzig for the Property, as security for a $960,000 loan from BANA to Leipzig. On April 15, 2008, Leipzig quitclaimed the deed to the Leipzig Living Trust (the "LLT") for nominal consideration. Johannessen alleges that, effective June 1, 2010, he entered into a residential lease of the Property from the LLT for a term of five years (through May 31, 2015). The lease allegedly gave Johannessen the right to purchase the property from the LLT in fee simple within that five-year term. Johannessen allegedly exercised that option in January 2011, although he does not allege that he recorded this transaction at the time. Thereafter, the LLT defaulted on its mortgage payments.[3]

Anarion alleges that, on January 14, 2013, Johannessen assigned all of his interests in the Property (whatever their nature) to Anarion, a Tennessee LLC.[4] Thereafter, several entities attempted to foreclose on the Property, leading to this lawsuit.

On February 6, 2013, Anarion claims to have discovered that ReconTrust Company, N.A. ("ReconTrust"), acting as BANA's appointed substitute trustee, had scheduled a foreclosure sale for February 7, 2014. ReconTrust, BANA, and Carrington Mortgage Services ("Carrington") allegedly agreed to postpone the trustee sale until March 25, 2013. At some point before that

---

[2] The court reiterates its observations in a previous opinion in this case: Anarion's allegations are exceedingly difficult to follow and are laced with rhetoric and invective that seems to reflect Attorney Johannessen's personal interest in this case.

[3] Although it is not stated in the Complaint, the facts presented with respect to the Rule 65 motions indicated that the LLT ceased making mortgage payments in May 2011.

[4] Johannessen is Anarion's counsel in this action.

2

rescheduled date, they allegedly agreed to postpone the sale at least through October 2014 and to permit Anarion to purchase the Note or the Property before the end of the lease term. Anarion claims that it offered to pay rent to the Defendants or to pay off "certain" of the LLT's outstanding debts, but the Defendants refused. At some point thereafter, BANA purported to assign the Deed of Trust to the Christiana Trust.

In November 2013, Brock & Scott, PLLC ("B&S"), Carrington, and the Christiana Trust allegedly published a foreclosure sale notice that Anarion claims contained false representations and did not provide sufficient notice to "interested parties," including Anarion.

Fundamentally, Anarion alleges these and other actions by the defendants violated the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). In the Amended Complaint, Anarion asserts a federal claim under the FDCPA, Tennessee state law claims for violations of the Tennessee Uniform Fraudulent Transfers Act ("TUFTA"), and related claims for disparagement of title and an action to quiet title. (Docket No. 15.) In addition to damages, the Amended Complaint seeks a declaratory judgment and an injunction against the defendants. (*Id.*) In most relevant part, Anarion contends that, to the extent any of the defendants' practices in collecting the LLT's debt violated the FDCPA, Anarion can recover for those violations under the FDCPA.[5]

On February 10, 2014, Anarion filed a Chapter 11 involuntary bankruptcy petition on behalf of the LLT. As Anarion later acknowledged, the LLT was a non-business trust that is not

---

[5] Again, Anarion does not claim that it owes a debt on the underlying Note. Instead, it contends that, under its purported "equitable interest" in the Property through its separate agreement with the LLT (to which the creditor(s) were not a party), it can challenge the defendants' debt collection/mortgage practices under the FDCPA. The court addressed the merits (and oddity) of this approach in its opinion concerning Anarion's requests for a preliminary injunction, which the court denied after considering evidence presented by both parties.

an eligible debtor in an involuntary bankruptcy case. Therefore, on March 18, 2014, the Bankruptcy Court dismissed the case. (*See In Re Leipzig Living Trust*, 3:14-bk-00953 (Bankr. M.D. Tenn.), Docket No. 22.)

On February 19, 2014, the Defendants filed the instant Motion to Dismiss the Amended Complaint. (Docket No. 18.) On February 25, 2014, Anarion filed a Suggestion of Bankruptcy relative to the Leipzig Living Trust. (Docket No. 23.) On March 5, 2014, Anarion filed a Response to the Motion to Dismiss. (Docket No. 26.)

On March 10, 2014, one day before a scheduled foreclosure sale on the Property, Anarion filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Docket No. 27.) Following a hearing that afternoon, the court denied the request for a temporary restraining order, for reasons stated on the record. (Docket No. 31.) The following morning, Anarion filed a Chapter 11 bankruptcy petition against Kirk Leipzig, individually and as trustee of the LLT, alleging that the LLT owed Anarion an unspecified debt. By filing that petition, Anarion received the intended benefit of a stay of foreclosure on the Property under 11 U.S.C. § 362(a). On March 12, 2014, the court stayed the case as to the LLT. (Docket No. 37.)

On March 25, 2014, Anarion filed another Motion for Preliminary Injunction (Docket No. 44), which was the subject of a hearing held on May 29, 2014. Following the hearing, the court denied Anarion's motion (*see* Docket Nos. 62-64). The foreclosure sale apparently took place on or about June 3, 2014.

On June 11, 2014, following the foreclosure sale, Anarion filed a Motion to Voluntarily Dismiss the bankruptcy case against Leipzig. (*See In Re Leipzig*, 3:14-bk-01964, Docket No. 51.) On July 2, 2014, the Bankruptcy Court dismissed the case in relevant part. (*In Re Leipzig*

4

Docket No. 62.)[6] Because the LLT is no longer subject to the bankruptcy petition, the court will lift its prior stay relative to the LLT.

## **RULE 12(B)(6) STANDARD**[7]

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement

---

[6] Although it is beyond the scope of facts necessary to resolve the instant motion, the court notes that the Bankruptcy Court's July 2, 2014 Order and the submissions leading up to it are remarkable. After Anarion filed its Motion to Voluntarily Dismiss the petition against Leipzig, Leipzig filed a *pro se* letter (Leipzig never retained counsel in the case) in which he stated that he was "shocked and amazed how Mr. Johannessen could even file such as a case against me when in fact I am not his debtor, he is mine. He has lived in my house for 3.5 years without paying a dime of rent. He owes me $270,000 of which I will never see. . . . He has ruined my life financially and now with this fraudulent involuntary bankruptcy petition case he has filed against me, it has really devastated me. . . . I am at your mercy to please expunge this case." (*In Re Leipzig* Docket No. 55.) The Bankruptcy Court's July 2, 2014 Order takes Leipzig's letter seriously: it construes Leigzig as potentially requesting that the case be expunged, that he receive fees or damages for a petition filed in bad faith, and that the petition not be reported by credit reporting agencies. The Bankruptcy Court noted the "unusual circumstances" of the case, which included Anarion filing an improper petition against the LLT and failing to serve Leipzig properly in *In Re Leipzig*, "while Anarion used the pending involuntary petition to protect its own property rights in connection with a pending foreclosure." Based on these circumstances, the Bankruptcy Court has retained jurisdiction over Leipzig's requests for relief and gave him a deadline to clarify the relief that he seeks. On July 15, 2014, represented by counsel, Leipzig filed an Amended Motion for Relief Under § 303, in which he seeks to seal the case and suppress credit reporting. (*In Re Leipzig* Docket No. 64.)

[7] For the reasons explained herein, the court finds that the FDCPA claims must be dismissed under Rule 12(b)(6). The court therefore will only set forth the Rule 12(b)(6) standard, although a facial challenge under Rule 12(b)(1) would implicate essentially the same analysis, because the issue presented relative to the FDCPA claims is a purely legal issue.

5

of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## ANALYSIS

### I. FDCPA Claims

The defendants contend that the court lacks subject matter jurisdiction or that Anarion has failed to state a claim because the FDCPA does not provide a private cause of action to corporate entities. Anarion argues that the FDPCA should be construed as protecting corporate entities from the types of violations at issue here. Resolution of this issue merits a holistic construction of the statute and its purposes.

#### A. Purpose of the FDCPA

Congress enacted the FDCPA in 1977 as an addition to the existing Consumer Credit Protection Act. In the "Congressional findings and declaration of purpose," the statute indicates

6

its intent to protect individuals against certain debt collection practices that cause harm to individuals:

> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of *personal bankruptcies*, to *marital instability*, and to *invasions of individual privacy*.
>
> . . .
>
> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action *to protect consumers* against debt collection abuses.

15 U.S.C. §§ 1692(a) and (e) (emphases added).[8]

### B. **FDCPA Definitions and Liability Provisions**

Section 1692(a) defines certain terms used within the FDPCA. A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." § 1692(a)(1). A "debt" is "any

---

[8] The Senate Report ("Report") associated with the FDPCA echoes these stated purposes related to individuals: "Its purpose is to *protect consumers* from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *See* S. Rep. No. 382, 95th Congr. 1st Session. According to the Report, prior to the legislation, "consumer abuse" in the debt collection context took many forms, including "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, [and] obtaining information about a consumer through false pretense [sic] . . . ." The Report went on to state that "80 million Americans, nearly 40 percent of our population, have no meaningful protection from debt collection abuse." The Report also explained that most consumers fully intend to pay their debts, and that, "[w]hen default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." Furthermore, the Report explains that "[t]his bill applies only to debts contracted by consumers for personal, family, or household purposes; it has no application to the collection of commercial accounts." With respect to civil liability, "consumers who have been subjected to collection abuses will be enforcing compliance." In sum, the Report sought to address the harms that abusive or aggressive debt collection practices cause to individuals.

obligation or alleged obligation of a consumer [*i.e.*, a natural person]⁹ to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." (emphasis added). A "debt collector" is "any person who . . . regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." *Id.* § 1692(a)(6). The Sixth Circuit has held that entities engaged in mortgage foreclosure proceedings constitute "debt collectors" under the FDPCA. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 452, 459-65 (6th Cir. 2013); *see also Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 423-424 (6th Cir. 2013).

Other provisions of the FDCPA define actions that violate the statute. Under § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt." (emphasis added). Section § 1692k provides that, "[e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person . . ." (emphasis added).

### C. "Person" and the Dictionary Act

Notably, the term "any person" is not defined within the FDCPA. Under the Dictionary Act, "*unless the context indicates otherwise*, . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1 (emphasis added). The relevant "context" courts should look to when construing terms found in the Dictionary is "the text of the Act of Congress surrounding the word at issue, or the texts of other related Congressional Acts." *Rowland v. Cal.*

---

⁹ Again, the FDCPA defines a "consumer" as a "*natural person* obligated or allegedly obligated to pay a debt." § 1692(a)(1) (emphasis added).

8

*Men's Colony, Unit Men's Advisory Counsel*, 506 U.S. 194, 200 (1993).  The bar for whether a statute "indicates otherwise" (*i.e.*, that the Dictionary Act's default definition does not apply) is relatively low:

> [T]he Dictionary Act's very reference to contextual "indication" bespeaks something more than an express contrary definition, and courts would hardly need direction where Congress had thought to include an express, specialized definition for the purpose of a particular Act; ordinary rules of statutory construction would prefer the specific definition over the Dictionary Act's general one.  Where a court needs help is in the awkward case where Congress provides no particular definition, but the definition in 1 U.S.C. § 1 seems not to fit.  There it is that the qualification "unless the context indicates otherwise" has a real job to do, in excusing the court from forcing a square peg into a round hole.
>
> The point at which the indication of a particular meaning becomes insistent enough to excuse the poor fit is of course a matter of judgment, but one can say that "indicates" certainly imposes less of a burden than, say, "requires" or "necessitates." One can also say that this exception from the general rule would be superfluous if the context "indicate[d] otherwise" only when use of the general definition would be incongruous enough to invoke the common mandate of statutory construction to avoid absurd results.  In fine, a contrary 'indication' may arise a specter short of inanity, and with something less than syllogistic force.

*Id.*  Here, without reference to the *Rowland* standard or the "unless" clause of the Dictionary Act, Anarion argues that the FDCPA affords it a private cause of action for a violation of § 1692(d).

### D. Application of the *Rowland* Standard

Construing the relevant provisions in context, the court finds sufficient "indications" that the Dictionary Act definition of "persons" does not apply to alleged violations of § 1692d.

If the court were to replace the term "any person" with "a corporation" or an LLC, certain provisions in the FDCPA would make little or no sense, because the FDPCA's violation terms generally seem to assume that a "person" is a "natural person."  For example, § 1692d(1) makes unlawful "the use or threat of use of violence or other criminal means to harm the physical person . . . of any person."  A corporation does not constitute a "physical person" that can be

9

physically harmed. Section 1692d(5) makes it unlawful to "[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to *annoy* . . . any person at the called number." Corporations, which do not have emotions, cannot be "annoyed," and a debt collector cannot have a direct conversation with a corporation.

Other provisions of the FDCPA similarly use the term "any person" in a context that does not apply to corporate entities. Under § 1692e, a debt collector may not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." That section states that, among other things, the following conduct is unlawful: "The representation or implication that nonpayment of any debt will result *in the arrest or imprisonment of any person* or the seizure, *garnishment*, attachment, or sale of property or *wages of any person* unless such action is lawful and the debt collector or creditors intends to take such action." *Id.* § 1692e(4) (emphases added). Corporations cannot be arrested or imprisoned, and they do not have wages that can be garnished.

In light of these provisions, the FDCPA presents the type of "awkward case" referenced in *Rowland*: the statute does not itself define "any person," but using the Dictionary Act definition would "not fit" – at least as to some FDCPA provisions. Furthermore, the FDPCA states that it was passed to remedy conduct that can lead to personal bankruptcies, marital infidelity, and to invasions of individual privacy – injuries that only natural persons, not corporate entities, can suffer.

Thus, the court finds that the context of the FDPCA "indicates" that the Dictionary Act definition of "person" should not define the term "any person" as it applies to aggrieved individuals entitled to bring suit under the FDCPA.

### E. Construction of the Term "Any Person" Under §§ 1692d and 1692k

Courts seem to agree that some FDCPA proscriptions provide a broader basis to sue than others. For example, "only a 'consumer' has standing to sue for violations of under 15 U.S.C. 1692c," *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647 (6th Cir. 1994), because the provisions expressly apply only to "consumers." *See, e.g.*, § 1692c(a)(1) ("[A] debt collector may not communicate *with a consumer* in connection with the collection of any debt . . . at any unusual time or place . . . .") (emphasis added).

By contrast, § 1692d by its own terms applies to conduct by a debt collector designed to harass, oppress, or abuse "any person," which suggests that individuals other than "consumers" may sue for its violation.

In *Wright*, the Sixth Circuit considered this issue relative to § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." An individual, Gladys Finch, allegedly owed $112 on an unpaid medical bill when she died. *Wright*, 22 F.3d at 638. Finch's daughter Betty Wright, who lived with her, was appointed executrix of Finch's estate. *Id.* After Finch died and Wright was appointed as executrix, the defendant debt collector sent fourteen letters addressed to Finch seeking to collect the debt. *Id.* Wright, in her capacity as executrix, opened the letters. *Id.* Each letter allegedly contained a violation of § 1692e. *Id.* at 649. The parties disputed whether Wright had standing to sue for these FDCPA violations in her capacity as executrix for Finch's estate.

The court examined § 1692k, which provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ." The court observed that this liability section "is couched in the broadest possible language." Wright, 22 F.3d at 649 (quoting *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y.

1998)). Thus, "absent a limitation in the substantive provisions, the ordinary and common understanding of § 1692k is that any aggrieved party may bring an action under § 1692e." Wright, 22 F.3d at 649-650. Notwithstanding this broad language, the court's holding was relatively narrow:

> [W]e find that, *at least in this case*, the phrase "with respect to any person" [in § 1692k] includes more than just the addressee of the offending letters. We conclude that the phrase, at a minimum, includes those persons, such as Wright, who *'stand in the shoes' of the debtor or have the same authority as the debtor to open and read letters of the debtor*. Otherwise, a debt collector's liability would depend upon fortuities *such as the alleged debtor's death*.

*Id.* (emphases added). Notably, Wright was a natural person, meaning that the court's decision did not address (nor did it purport to address) whether its holding extended to entities other than natural people. Instead, the court essentially addressed whether a natural person who did not actually owe the debt herself – in *Wright*, an executrix of the alleged debtor's estate obligated by operation of law to stand in the debtor's shoes – could sue for unlawful communications directed at the deceased debtor.

In addition to *Wright*, Anarion cites to several cases that similarly found that § 1692k provides a cause of action to natural persons who are not "consumers" under the FDCPA. For example, in *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003), Helen Smith financed the purchase of a BMW through a loan with Huntington Bank, which took a security interest in the car as collateral. *Id.* at 695. At some point, the bank believed that Smith had defaulted on her loan payments and retained a third party to repossess the car, which was parked at the house of Helen Smith's son, Duane Montgomery. *Id.* While Smith was away, the repo company opened his locked garage door without his permission (thereby breaking and entering), damaged his driveway and two of other cars parked nearby, and confiscated various personal

items of Montgomery's. *Id.* at 695-66. Montgomery sued the bank and the repo company for violating FDCPA §§ 1692c, d, and e. *Id*. at 696. The defendants argued that Montgomery lacked standing because he is not a "consumer" under the FDCPA. The Sixth Circuit held that (1) Montgomery (a natural person) had standing to sue under §§ 1692d and e, which are not limited to "consumers," but (2) that Montgomery lacked standing to sue for a violation of § 1692c, which expressly applies only to "consumers." *Id.* at 696-97. Again, because the plaintiff in Montgomery was a natural person, the issue of whether a corporate entity has standing under the FDCPA was not at issue and was not addressed in the court's holdings. Essentially, in *Montgomery*, the Sixth Circuit concluded that a natural person who became the victim of an unlawful practice under FDCPA §§ 1692d and e could sue for those violations.

As the court reads *Wright* and *Montgomery*, neither case holds that the term "any persons" in § 1692k (or in the underlying substantive provision at issue here, § 1692d) includes non-natural persons. Here, based on cases that construed § 1692k broadly enough to cover natural persons who do not actually owe the underlying debt being collected, Anarion would have the court engage in an unprecedented extension of the FDCPA to all corporate entities. Anarion does not cite – nor has the court located through its own research – any case in which a court has held a corporate entity may sue under the FDPCA for any reason.

The court is not prepared to make this unprecedented leap, which the terms of the FDCPA in no way require. As discussed herein, the FDCPA by its own terms seeks to protect against the infringement of interests held only by natural persons, including their individual privacy, marital stability, freedom from "personal bankruptcy," freedom from damage to their reputation, and the like. The statute forbids conduct that suggests "any person" could be arrested or imprisoned or have her wages garnished, forbids a debt collector from intentionally

13

"harassing" or "annoying" "any person," and forbids debt collectors from threatening to harm "the physical person" of "any person." For the reasons explained in the previous section, the court is not constrained to adopt the Dictionary Act definition of "person" in the context of the FDCPA. Instead, a more natural reading of § 1692k and § 1692d (as well as § 1692e) is to construe the term "any person" as meaning "any *natural* person." This definition is broader than the definition of "consumer," which is limited to natural people who owe a debt, and it is consistent with the Sixth Circuit's holdings in *Wright* and *Montgomery*, as well as with the holdings of other courts that have authorized FDCPA lawsuits by non-debtor natural persons.

In sum, this court does not extend standing under § 1692k to corporate plaintiffs alleging a violation of § 1692d. The court therefore finds that Anarion lacks statutory standing to sue under § 1692k.

## II. Procedural Basis for the the Dismissal

As the Supreme Court and the Sixth Circuit have recently clarified, when a party lacks statutory standing, the court should dismiss the claim for failure to state a claim – *not* for lack of subject matter jurisdiction. *See Roberts v. Hamer*, 655 F.3d 578 (6th Cir. 2011); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 563 n.2 (2013); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.3 (stating that, where Congress authorizes a "class of plaintiffs" to sue under a federal statute, the "statutory standing" inquiry "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.") (emphasis added).[10] Here, the issue resolved by the court is one of

---

[10] If a plaintiff raised a frivolous federal claim in bad faith for the purpose of invoking federal jurisdiction, the result might be different. Although Anarion's FDCPA claim is unprecedented, Anarion raised a colorable argument concerning the Dictionary Act's application to the FDCPA. Therefore, the court finds no grounds to conclude that Anarion filed the FDCPA claim in bad

14

statutory standing: namely, whether Anarion falls within certain statutory definitions and protections set forth in the FDCPA. Accordingly, the court will dismiss Anarion's FDCPA claims for failure to state a claim under Rule 12(b)(6), not for a lack of subject matter jurisdiction under Rule 12(b)(1).

### III. Supplemental Jurisdiction

The remaining claims in the case are supplemental state law claims against the moving defendants and the LLT. A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's'] original jurisdiction that they form part of the same case or controversy." *Carmichael v. City of Cleveland*, 2014 WL 3056534, at *6-*7 (6th Cir. 2014) (quoting 28 U.S.C. § 1367(a)). Generally, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). "However, there is no categorical rule that the pretrial dismissal of a federal claim bars a court deciding remaining state law claims." *Id.* at 1254. Instead, the decision regarding the exercise of supplemental jurisdiction depends on "judicial economy, convenience, fairness, and comity." *Id*. District courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Id.*[11]

Here, the court will not exercise supplemental jurisdiction over the remaining state law claims. Given that Anarion lacks standing to assert the FDCPA claims, the remaining claims in

---

faith, and the court will not award fees to the defendants, as they requested in their Memorandum in support of the Motion to Dismiss.

[11] Anarion's brief does not address whether the court should exercise supplemental jurisdiction after dismissing the FDCPA claims.

this case involve a thicket of allegations related to property interests in the underlying Property, various Ponzi schemes allegedly perpetrated by Kirk Leipzig or the LLT, and the defendants' handling (and allegedly fraudulent transfers of) the Deed or the Note.  These issues involve only the application of Tennessee law.  Furthermore, this case remains in its nascent stages.  It would not be in the interest of judicial economy for the court to continue to exercise jurisdiction over the state law claims.  Moreover, Tennessee has the stronger interest in the potentially viable claims in this lawsuit in any case, and it would not be inconvenient or unfair for the parties to adjudicate these claims in state court.

In sum, the court will dismiss the FDCPA claims with prejudice and, in the exercise of its discretion, the court will dismiss the remaining state law claims without prejudice.

## **CONCLUSION**

The defendants' motion will be granted.  The court will dismiss Anarion's FDCPA claims with prejudice for failure to state a claim under Rule 12(b)(6), the court will lift the stay as to the defendant LLT, and the court will decline to exercise supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge