# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANARION INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:14-cv-00012 |
| ) | Judge Aleta A. Trauger |
| v. ) | |
| ) | |
| CARRINGTON MORTGAGE SERVICES; ) | |
| BROCK & SCOTT, PLLC; CHRISTIANA ) | |
| TRUST; and LEIPZIG LIVING TRUST, ) | |
| ) | |
| Defendants, ) | |

## MEMORANDUM

Pursuant to Rules 12(b)(1) and 12(b)(6), the defendants (other than the Leipzig Living Trust) have filed a Motion to Dismiss claims asserted by the plaintiff, Anarion Investments, LLC ("Anarion"). (Docket No. 18.) Anarion has filed a Response (Docket No. 26), the defendants have filed a Reply (Docket No. 55) and a Supplemental Brief (Docket No. 83), Anarion has filed a Supplemental Response (Docket No. 85), and the defendants have filed a Supplemental Reply (Docket No. 90.) In addition, Anarion has filed a Motion for Leave to File a Second Amended Complaint (Docket No. 82), to which the defendants have filed a Response (Docket No. 84), and Anarion has filed a Reply (Docket No. 91). For the reasons stated herein, the court finds that Anarion has failed to state a claim against the Defendants under the FDCPA, and the court will decline to exercise supplemental jurisdiction over the remaining state law claims. The court will also deny leave to amend as futile.

# BACKGROUND[1]

This case concerns a residential property located in Brentwood, Tennessee (the "Property"). As noted previously, Anarion's pleadings and legal theories are not a model of clarity. Briefly, on March 18, 2008, Bank of America, N.A. ("BANA") entered into a Deed of Trust with Kirk Leipzig for the Property, as security for a $960,000 loan from BANA to Leipzig. On April 15, 2008, Leipzig quitclaimed the deed to the Leipzig Living Trust (the "LLT") for nominal consideration. Scott D. Johannessen alleges that, effective June 1, 2010, he entered into a residential lease of the Property from the LLT for a term of five years (through May 31, 2015). The lease allegedly gave Johannessen the right to purchase the property from the LLT in fee simple within that five-year term. Johannessen allegedly exercised that option in January 2011, although he does not allege that he recorded this transaction at the time. Thereafter, the LLT defaulted on its mortgage payments.

Anarion alleges that, on January 14, 2013, Johannessen assigned all of his interests in the Property (whatever their nature) to Anarion, a Tennessee LLC.[2] Thereafter, several entities attempted to foreclose on the Property, leading to this lawsuit.

On February 6, 2013, Anarion claims to have discovered that ReconTrust Company, N.A. ("ReconTrust"), acting as BANA's appointed substitute trustee, had scheduled a foreclosure sale

---

[1] This case has been litigated at some length, including a hearing before the Sixth Circuit Court of Appeals. This court's previous opinions concerning Anarion's requests for a preliminary injunction (Docket No. 64) and motion to dismiss (Docket No. 68), and the Sixth Circuit's opinion (Docket No. 79) include descriptions of the procedural history and facts of this case. The court presumes familiarity with these documents and will not repeat factual discussion unless necessary for this decision. Unless otherwise noted, the facts stated herein are drawn from the Amended Complaint, documents attached thereto, and documents incorporated by reference into the Amended Complaint.

[2] Johannessen is Anarion's counsel in this matter.

for February 7, 2013. ReconTrust, BANA, and Carrington Mortgage Services ("Carrington") allegedly agreed to postpone the trustee sale until March 25, 2013. At some point before that rescheduled date, they allegedly agreed to postpone the sale at least through October 2014 and to permit Anarion to purchase the Note or the Property before the end of the lease term. Anarion claims that it offered to pay rent to the defendants or to pay off "certain" of the LLT's outstanding debts, but the defendants refused. At some point thereafter, BANA purported to assign the Deed of Trust to the Christiana Trust.

In November 2013, Brock & Scott, PLLC ("B&S"), Carrington, and the Christiana Trust allegedly published a foreclosure sale notice that Anarion claims contained false representations and did not provide sufficient notice to "interested parties," including Anarion.

Fundamentally, Anarion alleges these and other actions by the defendants violated the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). In the Amended Complaint, Anarion asserts a federal claim under the FDCPA, Tennessee state law claims for violations of the Tennessee Uniform Fraudulent Transfers Act ("TUFTA"), and related claims for disparagement of title and an action to quiet title. (Docket No. 15.) In addition to damages, the Amended Complaint seeks a declaratory judgment and an injunction against the defendants. (*Id.*) In most relevant part, Anarion contends that, to the extent any of the defendants' practices in collecting the LLT's debt violated the FDCPA, Anarion can recover for those violations under the FDCPA.[3]

---

[3] Again, Anarion does not claim that it owed a debt on the underlying Note. Instead, it contends that, under its purported "equitable interest" in the Property through its separate agreement with the LLT (to which the creditor(s) were not a party), it can challenge the defendants' debt collection/mortgage practices under the FDCPA.

On February 10, 2014, Anarion filed a Chapter 11 involuntary bankruptcy petition against the LLT. As Anarion later acknowledged, the LLT was a non-business trust that is not an eligible debtor in an involuntary bankruptcy case. Therefore, on March 18, 2014, the bankruptcy court dismissed the case. (*See In Re Leipzig Living Trust*, 3:14-bk-00953 (Bankr. M.D. Tenn.) (Docket No. 22).)

On February 19, 2014, the Defendants filed the instant Motion to Dismiss the Amended Complaint. (Docket No. 18.) On February 25, 2014, Anarion filed a Suggestion of Bankruptcy relative to the Leipzig Living Trust. (Docket No. 23.) On March 5, 2014, Anarion filed a Response to the Motion to Dismiss. (Docket No. 26.)

On March 10, 2014, one day before a scheduled foreclosure sale on the Property, Anarion filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Docket No. 27.) Following a hearing that afternoon, the court denied the request for a temporary restraining order, for reasons stated on the record. (Docket No. 31.) The following morning, Anarion filed a Chapter 11 bankruptcy petition against Kirk Leipzig, individually and as trustee of the LLT, alleging that the LLT owed Anarion an unspecified debt. By filing that petition, Anarion received the intended benefit of a stay of foreclosure on the Property under 11 U.S.C. § 362(a). On March 12, 2014, the court stayed the case as to the LLT. (Docket No. 37.) On March 25, 2014, Anarion filed another Motion for Preliminary Injunction (Docket No. 44) , which was the subject of a hearing held on May 29, 2014. Following the hearing, the court denied Anarion's motion (*see* Docket Nos. 62-64). The foreclosure sale apparently took place on or about June 3, 2014. On June 11, 2014, following the foreclosure sale, Anarion filed a Motion to Voluntarily Dismiss the bankruptcy case against Leipzig. (*See In Re Leipzig*, 3:14-bk-01964, Docket No. 51.) On July 2, 2014, the Bankruptcy Court dismissed the case in relevant part. (*In Re Leipzig*

4

Docket No. 62.) Because the LLT was no longer in bankruptcy, the court lifted its prior stay relative to the LLT.

On July 17, 2014, the court issued a Memorandum (Docket No. 68) and Order (Docket No. 69) granting the Motion to Dismiss under Rule 12(b)(6) and declining to exercise supplemental jurisdiction over Anarion's remaining state law claims. The basis of the decision was a finding that Anarion did not have statutory standing to pursue the FDCPA claims because it was not a "person" under the definition of that term as utilized therein.

On August 8, 2014, Anarion appealed that decision to the Sixth Circuit Court of Appeals. (Docket No. 74.) On July 23, 2015, the Sixth Circuit reversed and remanded the court's ruling, finding that Anarion was a "person" for purposes of the FDCPA. On August 24, 2015, in light of that ruling, the court ordered supplemental briefing on the pending Motion to Dismiss. (Docket No. 81.) The defendants filed their supplemental brief on September 21, 2015 (Docket No. 83), Anarion responded on October 13, 2015 (Docket No. 85), and the defendants replied on October 26, 2015 (Docket No. 90).

On September 18, 2015, Anarion filed a Motion for Leave to File a Second Amended Complaint. (Docket No. 82.) On September 30, 2015, the defendants responded (Docket No. 84), and, on October 28, 2015, Anarion replied (Docket No. 91).

## **RULE 12(B)(6) STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement

5

of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## ANALYSIS

### I. FDCPA Claims

At the outset, the court must, again, emphasize that Anarion's pleadings and submissions in this case are confounding. Anarion has again asserted a polyglot of shotgun arguments, and it has been difficult for the court to keep track of what Anarion purports to assert in its lengthy briefs and how those claims truly relate to the underlying contractual arrangements in this case. However, fortunately for the defendants, they have raised an issue, among all the others before the court, that is dispositive. The defendants contend that the court lacks subject matter jurisdiction, or that Anarion has failed to state a claim, because the FDCPA does not provide a private right of action to Anarion because none of the alleged representations were made "with

respect to" Anarion under Section 1692k(a). The Sixth Circuit deliberately noted this potential protection for the defendants but left the question unanswered in this case because it was not necessary to decide it at the time. (*See* Docket No. 79, p. 5 ("[N]othing in our decision today means that Anarion can bring suit under the FDCPA. The district court's opinion answered only one question, and thus so does ours: whether Anarion is a "person" under the Act. Left unanswered, among other questions, is the question whether any of the defendants' representations were made "with respect to" Anarion, as required for relief under § 1692k(a) of the Act.")).

In *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647 (6th Cir. 1994), the Sixth Circuit examined § 1692k, which provides that "any debt collector who fails to comply with any provision of this subchapter *with respect to* any person is liable to such person . . . ." The court observed that this liability section "is couched in the broadest possible language." *Wright*, 22 F.3d at 649 (quoting *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y. 1998)). Thus, "absent a limitation in the substantive provisions, the ordinary and common understanding of § 1692k is that any aggrieved party may bring an action under § 1692e." *Wright*, 22 F.3d at 649-650. But, notwithstanding this seemingly broad language, the court's holding was relatively *narrow*:

> [W]e find that, at least in this case, the phrase "with respect to any person" [in § 1692k] includes more than just the addressee of the offending letters. We conclude that the phrase, at a minimum, includes those persons, such as Wright, who *'stand in the shoes' of the debtor or have the same authority as the debtor to open and read letters of the debtor*. Otherwise, a debt collector's liability would depend upon fortuities such as the alleged debtor's death.

*Id.* (emphasis added).
7

In *Wright*, the Sixth Circuit considered this issue relative to § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." An individual, Gladys Finch, allegedly owed $112 on an unpaid medical bill when she died. *Wright*, 22 F.3d at 638. Finch's daughter, Betty Wright, who lived with her, was appointed executrix of Finch's estate. *Id.* After Finch died and Wright was appointed as executrix, the defendant debt collector sent fourteen letters addressed to Finch seeking to collect the debt. *Id.* Wright, in her capacity as executrix, opened the letters. *Id.* Each letter allegedly contained a violation of § 1692e. *Id.* at 649. The parties disputed whether Wright had standing to sue for these FDCPA violations in her capacity as executrix for Finch's estate. The court held that an executrix of the alleged debtor's estate obligated by operation of law to stand in the debtor's shoes could sue for unlawful communications directed at the deceased debtor.

Here, however, Anarion does not allege facts that support the conclusion that it "stood in the shoes" of the debtor, Kirk Leipzig, or that it had "the same authority as the debtor to open and read letters of the debtor." Rather, the Amended Complaint alleges that "Plaintiff is a *creditor* of Leipzig" as the "holder of a right to purchase . . . during the Lease Term." (Docket No. 15, ¶ 19.) While Anarion may want to repeatedly characterize itself as an "equitable owner" in an effort to escape the facts of this matter, it cannot escape its own pleadings. As a creditor (or, at the very most, the beneficiary of a third party arrangement) of the debtor Leipzig, Anarion did not stand in his shoes, nor did it have the analogous authority to "read his mail." This scenario is clearly distinguishable from that in *Wright*. *Compare also with Montgomery v. Huntington Bank*, 246 F.3d 693 (6th Cir. 2003) (son of debtor who was in possession of secured collateral has standing to sue under FDCPA, when repossession agent caused damage to son's

property); *Whatley v. Univ. Collections Bureau Inc.*, 525 F. Supp. 1204 (N.D. Ga. 1981) (debtor's parents who claim collection agency threatened them over the phone had standing to sue under FDCPA).[4]

This result also makes sense logically. The *Wright* holding arose from a concern that, without extending Section 1692k(a) standing to the executor, the bad acts of the debt collector could go unpunished. Similarly, in *Montgomery*, if the son who suffered the damage were not allowed to bring suit, then the alleged bad acts of the repossession company would go unaddressed because the debtor-mother was not harmed. Here, if the debtor Leipzig was aggrieved by any of the acts complained of by Anarion, he was free to bring an FDCPA claim. Anarion, however, was not an "aggrieved party" as contemplated by interpretive caselaw. The court therefore finds that Anarion lacks statutory standing to sue under § 1692k(a).

Anarion has cited certain district court authority from other circuits for the proposition that this court should adopt a broader interpretation of "with respect to." The court finds this authority, which tends to be very general and in conflict with the limits of *Wright*, to be unpersuasive. Anarion also argues at length that, because the Sixth Circuit has found mortgage foreclosure to be debt collection, *see Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 464 (6th Cir. 2013), it has somehow abandoned *Wright* and its progeny where mortgage activity is concerned. However, the Sixth Circuit has given no such indication, and Anarion provides no good explanation as to why (other than opining about "urgent needs" to protect people in the wake of the "Great Recession"). Indeed, *Glazer* itself does not discuss *Wright* or address the

---

[4] Indeed, this court has previously recounted that Anarion and Leipzig had a very bad relationship that could certainly not have been mistaken for one in which Leipzig would have wanted Anarion to "step into his shoes" for much of anything. (*See, e.g.*, Docket No. 68, p. 5 n.6.)

meaning of "with respect to." It is clear that *Glazer* brings mortgage foreclosure within the ambit of the FDCPA; however, one still needs the proper interests to sue under Section 1692k(a).

## II.     Procedural Basis for the Dismissal

As the Supreme Court and the Sixth Circuit have recently clarified, when a party lacks statutory standing, the court should dismiss the claim for failure to state a claim – *not* for lack of subject matter jurisdiction. *See Roberts v. Hamer*, 655 F.3d 578 (6th Cir. 2011); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 563 n.2 (2013); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.3 (2014) (stating that, where Congress authorizes a "class of plaintiffs" to sue under a federal statute, the "statutory standing" inquiry "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.") (emphasis added). Here, the issue resolved by the court is one of statutory standing: namely, whether Anarion falls within certain statutory protections set forth in the FDCPA. Accordingly, the court will dismiss Anarion's FDCPA claims for failure to state a claim under Rule 12(b)(6), not for a lack of subject matter jurisdiction under Rule 12(b)(1).

The court finds that Anarion raised a colorable argument concerning the application of Section 1692k(a) in this case. Therefore, the court finds no grounds to conclude that Anarion filed its FDCPA claim in bad faith, and the court will not award attorney's fees to the defendants, as they requested in their supplemental memorandum in support of the Motion to Dismiss.

## III.     Supplemental Jurisdiction

The remaining claims in the case are supplemental state law claims against the moving defendants and the LLT. A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's'] original jurisdiction that they form part of the same case or controversy." *Carmichael v. City of Cleveland*, 2014 WL 3056534, at *6-*7

(6th Cir. 2014) (quoting 28 U.S.C. § 1367(a)). Generally, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). "However, there is no categorical rule that the pretrial dismissal of a federal claim bars a court deciding remaining state law claims." *Id.* at 1254. Instead, the decision regarding the exercise of supplemental jurisdiction depends on "judicial economy, convenience, fairness, and comity." *Id*. District courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Id.*

Here, the court will not exercise supplemental jurisdiction over the remaining state law claims. Given that Anarion lacks standing to assert the FDCPA claims, the remaining claims in this case involve a thicket of allegations related to property interests in the underlying Property, various Ponzi schemes allegedly perpetrated by Kirk Leipzig or the LLT, and the defendants' handling (and allegedly fraudulent transfers of) the Deed or the Note. These issues involve only the application of Tennessee law. Furthermore, this case remains in its nascent stages. It would not be in the interest of judicial economy for the court to continue to exercise jurisdiction over the state law claims. Moreover, Tennessee has the stronger interest in the potentially viable claims in this lawsuit in any case, and it would not be inconvenient or unfair for the parties to adjudicate these claims in state court.

In sum, the court will dismiss the FDCPA claims with prejudice and, in the exercise of its discretion, the court will dismiss the remaining state law claims without prejudice.

**IV.      Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party

11

may amend a pleading once as a matter of course within (a) twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, "[t]he court should freely give leave when justice so requires." *Id*.

However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). Stated differently, allowing an amendment that would subsequently be dismissed under a Rule 12(b)(6) motion does not serve the interests of justice.

Because the court has found that Anarion does not have statutory standing to proceed under Section 1692k(a), allowing the proposed Second Amended Complaint – which operates on the same basic facts – would be futile, as it, too would be subject to dismissal on the same grounds. The proposed Second Amended Complaint merely asserts additional bases for liability under the FDCPA that are premised on violations of more underlying laws – *e.g.*, the Real Estate

Settlement Procedures Act, the Bankruptcy Code, the Tennessee Home Loan Protection Act, the Protecting Tenants at Foreclosure Act – than it does a different underlying fact pattern. While the Second Amended Complaint includes some more additional factual detail about the defendants' alleged activities, the fundamental factual allegations concerning the mortgage foreclosure activities in which the defendants engaged remain the same and the fundamental nature of the parties' identities remain the same. Accordingly, the motion will be denied.

## CONCLUSION

The defendants' Motion to Dismiss will be granted. The court will dismiss Anarion's FDCPA claims with prejudice for failure to state a claim under Rule 12(b)(6) and the court will decline to exercise supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice. Anarion's Motion for Leave to File a Second Amended Complaint will be denied.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge